UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: JOHN RICHARDS HOMES
BUILDING COMPANY, L.L.C.

HONIGMAN, MILLER, SCHWARTZ
AND COHN, L.L.P. and
JOHN RICHARDS HOMES
BUILDING COMPANY, L.L.C.,

         Appellants,

    v.

KEVIN ADELL,

         Appellee.

_____/

CIVIL ACTION NO. 06-14355

DISTRICT JUDGE STEPHEN J. MURPHY, III

MAGISTRATE JUDGE VIRGINIA M. MORGAN

## REPORT AND RECOMMENDATION

### I.  Introduction

    This matter comes before the court on an appeal by appellants Honigman, Miller

Schwartz and Cohn ("HMSC") and John Richards Homes Building Co., L.L.C. ("JRH") from a

September 21, 2006 order of the United States Bankruptcy Court for the Eastern District of

Michigan (the "Bankruptcy Court") denying HMSC's request for attorney's fees and costs

incurred as a result of appellee Kevin Adell's post-award conduct.  For the reasons stated below,

this court recommends that the decision of the Bankruptcy Court be **REVERSED** and that this

case be remanded to the Bankruptcy Court for a decision on the merits of the request.

## II.  Background

While this appeal only presents a question regarding statutory interpretation, a recitation of the background of this matter may be helpful to the court.

### A.  Underlying Case

As described by the Sixth Circuit, the underlying case in this matter involved a dispute between JRH and Kevin Adell:

> As the bankruptcy court found, in December 2001, Adell and JRH entered into a Residential Building and Purchase Agreement whereby JRH, in exchange for $3,030,000, agreed to sell Adell a 1.8 acre parcel of property in Bloomfield Hills, Michigan, and to construct a home for Adell on the property, with construction to begin "within a reasonable time after the completion of building plans and issuance of permits."  On February 28, 2002, the deal closed.  The closing documents allocated $1,750,000 out of the $3,030,000 for the land purchase.
>
> Over the next few months, Adell's relationship with JRH and its principal, John Shekerjian, soured.  Adell began to complain about the pace of construction on his home and to contact JRH's former employees seeking negative information about JRH.  He told Shekerjian that he wanted another builder to build his house and, apparently, barred JRH from the property.  He also became upset about the amount he had paid for the land, contending that it was only worth $1 million instead of $1.75 million.
>
> On June 6, 2002, after a number of conversations, meetings, letters and other interactions between Adell or his representatives and JRH or its representatives, Adell filed a civil suit against JRH and Shekerjian in the Oakland County Circuit Court.  The complaint included a number of claims, all of which essentially rested on two allegations: (1) that Shekerjian and JRH had orally told Adell that the land was worth $1,000,000, and that the home they would construct for him would have a value of $2,000,000, despite the fact that the executed sale documents allocated $1,750,000 to the value of the land, leaving at most $1,280,000 for the home

construction; and (2) that Shekerjian for JRH had told Adell that construction would begin immediately after the sale closed, even though they knew that was impossible because there were "water problems" with the property, and that the resulting delay in commencing construction was not "reasonable." On June 18, 2002, JRH and Shekerjian jointly filed an answer, denying the substance of all of Adell's claims, stating affirmative defenses, and including a verified counter-complaint.

During the time between when Adell filed his state court civil suit and JRH and Shekerjian filed their responsive pleadings, Adell contacted at least two of JRH's contractors, telling them that JRH was in financial trouble and trying to persuade them to join him in filing an involuntary bankruptcy petition against JRH. Both refused.

On June 24, 2002, less than a week after JRH and Shekerjian filed their responses in the state court case and without any further discussion or communication, Adell, as the sole petitioning creditor, filed an involuntary bankruptcy petition against JRH pursuant to 11 U.S.C. § 303(b)(2). According to the petition, Adell's own claim against JRH for fraud and breach of contract was in the amount of $800,000. Adell sought to maximize the publicity attending his filing by hiring a public relations firm, Marx Layne, to publicize alleged defects in JRH's performance of its construction and financial obligations.

On July 1, 2002, JRH filed a motion to dismiss the petition. Noting that Adell's claim against JRH cited in the petition was also the basis for Adell's state court civil complaint against JRH and Shekerjian, and that JRH and Shekerjian had recently filed pleadings denying all of Adell's claims, JRH argued that Adell's claim was the subject of a "bona fide dispute," precluding its use as the basis for the petition. JRH also argued that Adell was required to have at least three petitioning creditors because JRH was an entity with 12 or more creditors. Should the petition be dismissed, JRH asked the bankruptcy court to award it fees, costs and damages pursuant to 11 U.S.C. § 303(I). On July 12, 2002, Adell's bankruptcy attorneys filed a notice that three additional creditors had joined in the filing of the petition.

On July 15, 2002, the bankruptcy court held a hearing on JRH's motion to dismiss. Ruling from the bench, the court granted the motion, concluding that Adell was not qualified to serve as a creditor in an involuntary bankruptcy because his claim against JRH was not undisputed. The court explained:

The record that is before the Court overwhelmingly establishes that there is a bona fide dispute concerning this petitioning creditor's claim against the Alleged Debtor ... [and]

... that there are significant genuine issues of material fact concerning any disposition of the issues raised in the [state court case], ... such fundamental issues as which of the parties breached the contract, which of the parties was the first to breach the contract. There are clear issues of fact concerning particularly the fraud claim and the statutory claim.

Having rejected the sole petitioning creditor, Adell, the bankruptcy court ruled that it could not permit the joinder of other putative creditors. Adell did not appeal the bankruptcy court's dismissal of the petition.

After a period of discovery, followed by a two-day evidentiary hearing, the bankruptcy court granted JRH's motion on April 25, 2003. In a thorough opinion, the court found that Adell filed the involuntary bankruptcy petition against JRH in bad faith and awarded JRH compensatory damages in the amount of $4,100,000, punitive damages in the amount of $2,000,000, and attorneys' fees and costs in the amount of $313,230.68. [In re John Richards Homes Bldg. Co., L.L.C., 439 F.3d 248, 252-254 (6th Cir. 2006) (internal citations omitted).]

## B. Post-Judgment Events

On May 2, 2003, Adell appealed the Bankruptcy Court's decision. See In re John Richards Homes Building Co., L.L.C., 312 B.R. 849, 854 (E.D. Mich. 2004).

On May 6, 2003, while the appeal was pending, Adell entered into a purchase agreement for a $2.8 million home in Florida. See In re John Richards Homes Bldg. Co., L.L.C., 298 B.R.

591, 593 (Bankr. E.D. Mich. 2003).  On May 8, 2003, he closed on the purchase of the Florida home.  See In re John Richards Homes, 298 B.R. at 593.

On May 12, 2003, JRH directed writs of garnishment towards Adell's employers, Adell Broadcasting and STN.com, and 24 other persons or entities.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #217 through D/E #242)  Adell Broadcasting and STN.com subsequently filed garnishee disclosures on May 23, 2006.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #300 and #302)

On May 21, 2003, JRH filed a motion in the Bankruptcy Court for miscellaneous post-judgment relief, seeking the aid of the Bankruptcy Court to collect on its judgment.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #281)  Specifically, JRH argued that because Adell had used the proceeds from his Michigan assets to purchase the Florida home immediately after the judgment was entered, Adell should be ordered to sell that home and remit the proceeds in partial satisfaction of the judgment.  See In re John Richards Homes, 298 B.R. at 593.[1]

On September 17, 2003, the Bankruptcy Court granted JRH's motion in part after finding that Florida's homestead exemption, as construed by Florida Supreme Court, was preempted by federal law and did not provide any protection for a party who had filed an involuntary bankruptcy petition in bad faith and who was attempting to protect his assets from the substantial

_____

[1]While the Bankruptcy Court held a hearing on JRH's motion (Bankr. E.D. Mich. Petition No. 02-54689; D/E #317), it denied Adell's request for an Evidentiary Hearing on the issue of whether he was domiciled in Michigan or Florida.  On July 30, 2003, Adell appealed the Bankruptcy Court's denial of Adell's request for an Evidentiary Hearing on the issue of whether Adell was domiciled in Michigan or Florida.  (Case No. 03-40194, D/E #1).  On February 18, 2004, the District Court closed that appeal for administrative purposes because Adell had filed for bankruptcy.  (Case No. 03-40194, D/E #14)

compensatory and punitive damages awards entered against him by the Bankruptcy Court.  In re

John Richards Homes, 298 B.R. at 605-606.  The Bankruptcy Court further found that, in the

alternative, even if the Florida homestead exemption was not preempted, Adell did not qualify

for it because the Florida house was not his homestead.  In re John Richards Homes, 298 B.R. at

607-608.  The Bankruptcy Court ordered that Adell sell the Florida property within sixty (60)

days and turn the proceeds from that sale over to JRH.  In re John Richards Homes, 298 B.R. at

606.  The Bankruptcy Court also ordered that Adell turn over certain assets to the U.S. Marshals

and that the Michigan Secretary of State record a lien in favor of JRH on any vehicles still titled

in Adell's name.  In re John Richards Homes, 298 B.R. at 609.[2]

On September 30, 2003, JRH filed motions for judgment against Adell Broadcasting

Corp. and STN.com pursuant to M.C.L. § 600.4051 on the basis that the garnishee disclosures

filed by those two companies were false.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #480

and #483)

On November 14, 2003, Adell sought relief under Chapter 11 of the Bankruptcy Code in

the United States Bankruptcy Court for the Middle District of Florida (the "Florida Bankruptcy

Court"), immediately triggering the operation of the automatic stay imposed by Section 362 of

the Bankruptcy Code and stopping any further collection attempts by JRH.  See In re Adell, 321

B.R. 573, 577 (Bankr. M.D. Fla. 2005).

---

[2]On September, 26, 2003, Adell appealed the Bankruptcy Court's ruling that the Florida
home did not fall within the Florida homestead exemption.  (E. D. Mich. Case No. 03-40245,
D/E #1)  On February 18, 2004, the District Court closed that appeal for administrative purposes
because Adell had filed for bankruptcy.  (Case No. 03-40245, D/E #12)

In response, JRH first moved to transfer Adell's Chapter 11 case from the Florida Bankruptcy Court to the Bankruptcy Court in Michigan. See In re Adell, 371 B.R. 541, 543 (Bankr. M.D. Fla. 2007) That motion was denied. In re Adell, 371 B.R. at 543. Having failed to obtain a transfer to the Michigan Bankruptcy Court, JRH tried, unsuccessfully to transfer the case to a different judge in the Middle District of Florida. In re Adell, 371 B.R. at 543.

On February 10, 2004, JRH filed a motion to dismiss Adell's Chapter 11 filing on the basis that it was filed in bad faith. On May 28, 2004, the Florida Bankruptcy Court, after extensive hearings, entered an order and opinion denying JRH's motion to dismiss. See In re Adell, 310 B.R. 460, 461 (Bankr. M.D. Fla. 2004).

On February 25, 2004, Adell filed a Chapter 11 plan of reorganization which proposed to pay the judgment in full over time once the judgment became final and no longer appealable. JRH objected to that plan. In re Adell, 371 B.R. at 543. Subsequently, Adell amended the proposed plan to accelerate payment of the judgment, pay interest on the judgment, and to secure the judgment to the extent of at least $3.0 million with a cash escrow. JRH continued to object. In re Adell, 371 B.R. at 543.

On August 5, 2004, the United States District Court for the Eastern District of Michigan affirmed the Bankruptcy Court's award of JRH's costs, attorneys' fees, compensatory damages and punitive damages pursuant to 11 U.S.C. § 303(I). In re John Richards Homes Building Co., L.L.C. 312 B.R. 849, 867 (E.D. Mich. 2004). Subsequently, on September 1, 2004, Adell appealed the District Court's affirmation of the Bankruptcy Court's award. (Case No. 03-40109, D/E #20)

On October 15, 2004, the Florida Bankruptcy Court denied JRH's motion for relief from the automatic stay as to the garnishment actions against STN.com and Adell Broadcasting Corp. In re Adell, No. 03-23684, 2004 WL 2931390 (Bankr. M.D. Fla. October 15, 2004).

On October 27, 2004, the Florida Bankruptcy Court entered an Order denying Adell's Fourth Amended Chapter 11 Plan and set a hearing for November 18, 2004, to consider a dismissal of the bankruptcy case. In re Adell, 371 B.R. at 544. That Order was challenged by Adell, who filed a Motion for Reconsideration on November 5, 2004. In re Adell, 371 B.R. at 544. On March 22, 2005, the Florida Bankruptcy Court granted Adell's request for reconsideration. In re Adell, 371 B.R. at 544.

In response to the Reconsideration Order, Adell proposed a plan to place $7,000,000 in escrow to be used to satisfy the judgment if it was affirmed on appeal. That plan was to be funded by Adell's employers and by a mortgage on Adell's homestead. In re Adell, 371 B.R. at 544.

On February 1, 2005, the Florida Bankruptcy Court granted Adell's request to avoid, on exemption impairment grounds, the lien on the Florida residence. In re Adell, 321 B.R. 573, 578 (Bankr. M.D. Fla. 2005). As found by the Florida Bankruptcy Court:

> The difference between the existing facts and the facts at the time the Michigan Bankruptcy Court rejected the claim should be quite evident. The Debtor's homestead exemption claim presented to this Court is in the context of an already pending bankruptcy case of the Debtor. Based on the evidence presented to this Court, this Court is satisfied that the Debtor complied with the residency requirements of Section 522(b)(2)(A), that he was a bone fide resident of Florida at the time he filed his Petition for relief under Chapter 11 in this Court, therefore, he is entitled to the homestead

protection guaranteed by Article X, Section 4 of the Florida
Constitution. Thus, the Naples residence of the Debtor is exempt
and JRH cannot compel the same to be sold to satisfy the
Judgment of the Michigan Bankruptcy Court based on the sanction
award granted to JRH. [In re Adell, 321 B.R. at 578.]

On May 11, 2005, the Florida District Court, considering JRH's appeal of the Florida
Bankruptcy Court's denial of JRH's initial motion to dismiss the Chapter 11 case reversed the
Florida Bankruptcy Court's ruling and held that the denial was in error and the Chapter 11 Case
should be dismissed it was a bad faith filing. In re Adell, 371 B.R. at 544.

However, on May 12, 2005 and before an order dismissing the case could be entered,
Adell filed a notice that he was voluntarily converting his bankruptcy to a case under Chapter 7.
In re Adell, 371 B.R. at 544. On May 17, 2005, the Florida Bankruptcy Court entered an order
converting Adell's Chapter 11 Case to a case under Chapter 7. In re Adell, 371 B.R. at 544.[3]

On July 13, 2005, the Florida Bankruptcy Court denied JRH's second motion requesting
relief from the automatic stay in order to pursue garnishment proceedings after determining that
a finding of bad faith in filing a Chapter 11 petition has no relevance to Adell's right to maintain

---

[3]On June 21, 2005, the Florida Bankruptcy Court sanctioned JRH's counsel for actions
taken by JRH's counsel on May 11, 2005 in the Michigan Bankruptcy Court. In re Adell, 328
B.R. 845, 849 (Bankr. M.D. Fla. 2005). On May 11, 2005, after the Florida District Court
entered an order granting JRH's motion to dismiss, JRH's counsel sought immediate
appointment of a receiver for Adell's property in the Michigan Bankruptcy Court. According to
the Florida Bankruptcy Court, the mere entry of an order granting the motion to dismiss did not
dismiss the case and, therefore, Adell's case was still before the Florida Bankruptcy Court until
the Florida District Court revoked the reference. Accordingly, in the Florida Bankruptcy
Court's view the automatic stay never ceased to exist and it still protected Adell regardless of
any findings of the Michigan Bankruptcy Court. In re Adell, 328 B.R. at 848.

a Chapter 7 case and, thus, does not serve as a "cause" for granting relief from the stay.  See In re Adell, 328 B.R. 850, 852-853 (Bankr. M.D. Fla. 2005).

On July 22, 2005, JRH filed a second motion to dismiss (Doc. No. 677) and, on October 4, 2005, the Florida Bankruptcy Court entered an order granting JRH's motion to dismiss Adell's Chapter 7 Case after finding that cause existed for dismissal because Adell's filing was not supported by the well-established policy aims of Chapter 7.  See In re Adell, 332 B.R. 844, 848-849 (Bankr. M.D. Fla. 2005).

On February 14, 2006, the Florida Bankruptcy Court entered an order reaffirming the order on the motion to dismiss and denying Adell's Emergency Motion for Reconsideration and Motion for Stay Pending Reconsideration or Appeal.  See In re Adell, 343 B.R. 717, 722 (Bankr. M.D. Fla. 2006) ("this Court is satisfied that there is nothing stated in [Adell's] Emergency Motion for Reconsideration which would warrant this court to set aside its Order on Motion to Dismiss.").

On March 1, 2006, the Sixth Circuit affirmed both the Bankruptcy Court's award and the District Court's approval of that reward.  See In re John Richards Homes Bldg. Co., L.L.C., 439 F.3d 248, 252 (6th Cir. 2006)

On April 3, 2006, Adell paid the judgment in full with interest.  Included in the payment were the punitive damages, costs and attorneys' fees that the Bankruptcy Court awarded JRH in

defending the involuntary case and obtaining the Judgment.  See  In re Adell, 371 B.R. 541, 544 (Bankr. M.D. Fla. 2007).[4]

Prior to payment of the judgment, on February 16, 2006, JRH had filed a "Motion to Enforce Judgment" in which it reasserted early motions for judgment against Adell Broadcasting Corp. and STN.com (Bankr. E.D. Mich. Petition No. 02-54689; D/E #773).  On August 8, 2006, the Bankruptcy Court denied JRH's motions for judgement against Adell Broadcasting Corp. and STN.com.  See In re Johns Richards Homes Company, L.L.C., 346 B.R. 762 (Bankr. E.D. Mich. 2006).  According to the Bankruptcy Court, the Michigan Court Rules undermined JRH's argument that M.C.L. § 600.4051 imposed full liability for the judgment on the garnishee defendant that is separate from the defendant's liability and it is a better reading of the statute that a garnishee defendant that files a false disclosure is liable only for the remaining balance due on the underlying judgment.  In re John Richards Homes, 346 B.R. at 766.  In this case, because Adell had paid the judgment and there was no balance, the Bankruptcy Court found that Adell Broadcasting and STN.com had no further liability to JRH.  In re John Richards Homes, 346 B.R. at 766.

Following payment of the judgment, JRH filed a motion for sanctions in the Florida Bankruptcy Court.  On April 7, 2006, the Florida Bankruptcy Court entered an order denying

---

[4]While Adell paid the judgment on April 3, 2006, he still filed a Petition for a Writ of Certiorari on May 30, 2006.  Petition for Writ of Certiorari, Adell v. John Richards Homes Bldg. Co., No. 05-1532, 2006 WL 1519179, (May 30, 2006).  On October 2, 2006, the United States Supreme Court denied Adell's petition for writ of certiorari.  Adell v. John Richards Homes Bldg. Co., L.L.C., 127 S.Ct. 85 (Mem), No. 01-1532 (2006).

JRH's motion to impose sanctions on the basis that Adell's petition had been dismissed and, therefore, it did not retain jurisdiction in order to issue any further orders relating to the above-captioned case. See In re Adell, No. 2:06-cv-276-FtM-29SPC, 2006 WL 3827438, *1 (M.D. Fla. December 27, 2006). On April 21, 2006, the Florida Bankruptcy Court denied reconsideration of that motion as without merit, and on April 30, 2006, JRH filed a notice of appeal. In re Adell, 2006 WL 3827438 at *1. On December 27, 2006, the United States District Court for the Middle District of Florida issued an opinion and order granting JRH's motion to remand. In re Adell, 2006 WL 3827438 at *1. According to the Florida District Court, the case was remanded to the Florida Bankruptcy Court to revisit JRH's motion for sanctions on the merits, or to indicate that its prior order was based on the merits as well as lack of jurisdiction. In re Adell, 2006 WL 3827438 at *1. On March 28, 2007, the Florida Bankruptcy Court denied JRH's motion for sanctions after determining that Adell had attempted to pursue a legitimate goal within the utmost of his ability when filing for bankruptcy and that, therefore, imposing a sanction would be a double punishment in addition to the $2 million judgment imposed by the Michigan Bankruptcy Court. See In re Adell, 371 B.R. 541, 545-546 (Bankr. M.D. Fla. 2007). On March 18, 2008, the Florida District Court affirmed the Florida Bankruptcy Court's decision to deny sanctions. In re Adell, No. 2:07-cv-361-FTM-29SPC, 2008 WL 746833 (M.D. Fla. March 18, 2008). On October 17, 2007, the Eleventh Circuit issued an opinion affirming the Florida District Court's opinion. See In re Adell, No. 08-12220, 2008 WL 4605956 (11th Cir. October 17, 2008).

On April 13, 2006, JRH filed a "Motion for Assessment of Additional Punitive Damages" in the Bankruptcy Court. (Bankr. E.D. Mich. Petition No. 02-54689; D/E #834) Adell filed an objection to the motion (Bankr. E.D. Mich. Petition No. 02-54689; D/E #879) and the Bankruptcy Court conducted a hearing regarding that motion on July 10, 2006. On September 21, 2006, the Bankruptcy Court denied JRH's motion for assessment of additional punitive damages. In re John Richards Homes Co., L.L.C., No. 02-54689-R, 2006 WL 3230009 (Bankr. E.D. Mich. September 21, 2006). In denying that motion, the Bankruptcy Court stated:

> The Court declines to sanction Adell, either pursuant to any inherent power it may have or pursuant to § 105. Contrary to JRH's assertion, the Court did not order Adell to pay JRH $6.413 million. The Court entered a judgment for that amount. A money judgment is not a court order. To the extent that Adell's conduct in the various courts warrants sanctions, JRH is free to seek redress in those courts. [In re John Richards Homes, 2006 WL 3230009 at *2.]

## C. Matter Before the Court

On April 21, 2006, HMSC, the law firm representing JRH in this matter, filed a "Second Application for Compensation of Attorney Fees and Expenses" in the Bankruptcy Court. (Bankr. E.D. Mich. Petition No. 02-54689; D/E #834). In that application, HMSC sought, pursuant to 11 U.S.C. § 303(i), $1,712,974.04 as compensation for fees and expenses incurred in enforcing the judgment and defending the appeals. Adell filed an objection to that application (Bankr. E.D. Mich. Petition No. 02-54689; D/E #880) and the Bankruptcy Court conducted a hearing regarding that motion on July 10, 2006. On September 21, 2006, the Bankruptcy Court denied HSMC's second application. See In re John Richards Homes, Co. L.L.C., No.

02-54689-R, 2006 WL 3228523 (Bankr. E.D. Mich. September 21, 2006). In denying that application, the Bankruptcy Court noted that (1) HMSC not only sought attorney's fees and costs for the appeals, but for all fees and costs incurred trying to collect the judgment, and that (2) few cases have addressed the precise issue of whether § 303(i)(1) authorizes the bankruptcy court to award fees and costs beyond those directly incurred in defending the involuntary petition. In conclusion the Bankruptcy Court stated:

> [HMSC] not only seeks attorney fees and costs for the appeals, but for all fees and costs incurred trying to collect the judgment. HMS & C has offered no legal support for this request. In light of the caselaw to the contrary, the Court must deny its application for a second award of attorney fees and costs. [In re John Richards Homes, 2006 WL 3228523 at *2.]

On October 3, 2006, JRH and HMSC filed a notice of appeal with respect to the Bankruptcy Court's denial of HSMC's second application for compensation of attorney fees and expenses (D/E #1). In their appellate brief (D/E #3), JRH and HMSC argue that the Bankruptcy Court erred when it found that it could not award the attorney's fees and costs JRH incurred while trying to collect the judgment. According to appellants, the Bankruptcy Court's decision ignored the statutory text, relied upon wrongly-decided cases, and frustrated legislative intent.

In his appellate brief (D/E #10), Adell argues that the Bankruptcy Court lacked jurisdiction over HMSC's application because the bankruptcy case has been closed, HMSC was only a creditor of JRH, and because JRH has not sought relief from the judgment, which has been paid. Adell also argues that § 303(i)(1) does not apply to post-judgment fees and that the Bankruptcy Court's interpretation is consistent with both the comprehensive scheme governing

recovery of fees and costs as well as the case law regarding the recovery of appellate fees and sanctions.

In their reply brief (D/E #13), JRH and HMSC assert that Adell's arguments regarding jurisdiction are meritless and should be rejected. Appellants also reiterate that the Bankruptcy Court could award attorney's fees and costs without regard to cause and without regard to whether the fees and costs were expended before or after dismissal of the involuntary petition.

## III.  Standard of Review

District courts have jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges. See 28 U.S.C. § 158(a)(1). The District Court reviews a bankruptcy court's conclusions of law de novo. See In re Holland, 151 F.3d 547, 548 (6th Cir. 1998).

## IV.  Discussion

### A.  Jurisdiction

As a preliminary matter, Adell argues that the Bankruptcy Court did not have jurisdiction to rule on HMSC's application because the bankruptcy case has been dismissed. While Adell raised this argument below, the Bankruptcy Court did not address it. Nevertheless, while the Bankruptcy Court did not deny HMSC's application because of a lack of jurisdiction, the District Court may consider whether the Bankruptcy Court was without jurisdiction to consider the motion in the first instance as an alternative ground for affirming the decision below. See; Dimmitt & Owens Fin., Inc. v. Herdean (In re Herdean), 92 Fed. Appx. 107, 110 (6th Cir. 2003) (affirming bankruptcy court decision on alternative basis, despite error in reason given for decision below). Moreover, "federal courts, being of limited jurisdiction, must examine their

subject-matter jurisdiction 'throughout the pendency of *every* matter before them.'" See Holloway v. Brush, 220 F.3d 767, 781 (6th Cir. 2000) quoting Children's Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1412, 1419 n. 2 (6th Cir.1996) (emphasis in original). As the Sixth Circuit has observed, a court has a duty to inquire into the basis for subject matter jurisdiction and to dismiss the case if jurisdiction is lacking. See Campanella v. Commerce Exch. Bank, 137 F.3d 885, 890 (6th Cir. 1998). The United States Supreme Court has expressly instructed that "every federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986). Therefore, in light of that case law and Adell's arguments, it is appropriate for the court to consider the issue of subject matter jurisdiction as it relates to the matter at hand.

Reviewing the scope of bankruptcy court jurisdiction begins with the Congressional grant of jurisdiction in 28 U.S.C. §§ 1334 and 157. Section 1334 confers jurisdiction on the district court to hear "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). § 157 provides for the referral of those matters to the bankruptcy courts and sets up the framework of core and non-core, related proceedings.

Core proceedings consist of "any or all proceedings arising under title 11 or arising in a case under title 11." 28 U.S.C. § 157(b). Interpreting § 157(b)(2), the Sixth Circuit has held that "[a] core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." In re Lowenbraun, 453 F.3d 314, 320 (6th Cir. 2006) quoting Sanders Confectionary Prods., Inc. v. Heller Financial, Inc., 973 F.2d 474, 482

(6th Cir. 1992) (holding that an action was a core proceeding where "a successful action on the [

] plaintiffs' part could have affected the outcome of the bankruptcy proceeding"); see also In re

DeLorean Motor Co., 155 B.R. 521, 525 (B.A.P. 9th Cir.1993) (holding that even if a claim fits

within the literal language of § 157(b)(2), it will not be considered a core proceeding "if it is a

state law claim that could exist outside of bankruptcy and is not inextricably bound to ... a right

created by the Bankruptcy Code.")  A nonexhaustive list of core proceedings is found in 28

U.S.C. § 157(b)(2).

Non-core, related proceedings are civil proceedings which do not invoke a substantive

right created by bankruptcy but nonetheless fall within the jurisdiction of the bankruptcy court

because they share a nexus with the bankruptcy case and will have some "conceivable effect" on

the administration of the debtor's estate.  See In re Williams, 256 B.R. 885, 893 (B.A.P. 8th Cir.

2001).

This appeal calls into question the jurisdiction, if any, of the bankruptcy court to conduct

proceedings subsequent to the dismissal of the underlying bankruptcy case.  In In re

Lowenbraun, 453 F.3d 314, 321 (6th Cir. 2006), the Sixth Circuit cited with approval the case In

re Douglas L. Heinsohn, 247 B.R. 237, 242-44 (E.D. Tenn. 2000), in which the District Court

stated that "[t]here is no bright-line rule dictating that once an estate has been fully administered

a trustee cannot avail himself of the federal court's bankruptcy jurisdiction") (citation and

quotation marks omitted).  Moreover, 28 U.S.C. § 1334(b) and  28 U.S.C. § 157(b) specifically

provide that bankruptcy court jurisdiction is not limited to matters concerning the administration

of the estate and other courts have found that a bankruptcy court may have the discretion to

determine whether it is proper to exercise jurisdiction after the underlying case has been dismissed or closed.  See Carraher v. Morgan Electronics, Inc. ( In re Carraher ), 971 F.2d 327 (9th Cir. 1992) (holding that bankruptcy court has discretion to retain jurisdiction over related case after dismissal of the underlying bankruptcy case); In re Morris, 950 F.2d 1531, 1534 (11th Cir. 1992).  See also In re Javens, 107 F.3d 359, 364 n. 2 (6th Cir. 1997) (finding that dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction to dispose of related matters after the underlying bankruptcy case has been dismissed, although the exercise of such jurisdiction is left to the sound discretion of the court).

As a general rule, the dismissal of a bankruptcy case results in the dismissal of non-core, related proceedings, because the bankruptcy court's jurisdiction over the related proceeding depends on its nexus with the underlying bankruptcy case.  In re Williams, 256 B.R. at 893; Tim Wargo & Sons, Inc. v. Mankin Farms, Inc. ( In re Tim Wargo & Sons, Inc.), 107 B.R. 626 (Bankr. E.D. Ark.1989) (citing In re Smith, 866 F.2d 576, 580 (3rd Cir.1989)).

On the other hand, there is much support for the proposition that bankruptcy courts retain jurisdiction over core proceedings beyond the dismissal or closure of the underlying bankruptcy case.  See In re Williams, 256 B.R. at 893; Post v. Ewing ( In re Post ), 119 B.R. 566, 567 (S.D. Ohio 1989); Davis v. Courington ( In re Davis ), 177 B.R. 907, 911 (B.A.P. 9th Cir. 1995); In re Hardy, 209 B.R. 371, 373 (Bankr. E.D.Va. 1997).  As noted by the Eighth Circuit, core proceedings that "arise after the case is dismissed or closed, however, do not fit neatly into the categories listed in 28 U.S.C. § 157(b)(2), inasmuch as most or all of those categories are premised on the existence of an underlying bankruptcy estate."  In re Williams, 256 B.R. at 893.

Examples of core proceedings that arise after a bankruptcy case is dismissed or closed include awards of costs, attorney's fees, damages, punitive damages and sanctions.  See In re Cooper School of Art, Inc., 709 F.2d 1104, 1106 (6th Cir. 1983) (holding that when "a bankruptcy court dismisses a petition for involuntary proceedings under Chapter XI for failure to join three or more creditors it does not lose jurisdiction for the purpose of awarding costs and attorney fees") In re R. Eric Peterson Constr. Co., Inc., 951 F.2d 1175, 1179 (10th Cir. 1991) (finding that dismissal of the bankruptcy petition is one prerequisite that must be met before the bankruptcy court can make a § 303(i) award); Price v. Rochford, 947 F.2d 829, 830-31 (7th Cir. 1991) (holding that an action under § 362(h) for damages for willful violation of an automatic stay survives dismissal of the case in bankruptcy); In re Singer Furniture Acquisition Corp., 261 B.R. 745, 750-751 (Bankr. M.D. Fla. 2001) (awarding sanctions pursuant to the inherent power of the court and 11 U.S.C. § 105 for the filing of a Chapter 11 Petition in bad faith); In re Glannon, 245 B.R. 882, 887 (D. Kan. 2000) (holding that § 303(i) proceedings are core proceedings that the bankruptcy court retained jurisdiction over following the dismissal of the bankruptcy petition); In re Atlas Mach. and Iron Works, Inc., 190 B.R. 796, 798 (Bankr. E.D. Va. 1995) (holding that a bankruptcy court retains jurisdiction following dismissal of the involuntary bankruptcy proceeding for the purposes of awarding costs, attorneys' fees and damages because those proceedings constitute core proceedings under 28 U.S.C. § § 157(b)(2)(A), (C) and (O)."

In this case, HMSC's second application for attorney's fees and costs was a core proceeding over which the Bankruptcy Court retained jurisdiction after the dismissal of the involuntary petition and the payment of the judgment.  In making the determination of whether a

proceeding is a core proceeding, the court looks at the form and the substance of the proceeding. Sanders Confectionery Prods., Inc., v. Heller Fin., Inc., 973 F.2d 474, 483 (6th Cir.1992) citing In re Wolverine Radio Co., 930 F.2d 1132, 1144 (6th Cir. 1991). Here, HMSC's second application arises from the judgment issued by the Bankruptcy Court, which was clearly a core proceeding, and it is inextricably intertwined with the bankruptcy case itself. As discussed above, several courts have expressly found that motions for awards of attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(1) constitute core proceedings that a bankruptcy court has jurisdiction of after the dismissal of the involuntary petition. In re Cooper School of Art, 709 F.2d at 1106; In re R. Eric Peterson Constr., 951 F.2d 1179; In re Glannon, 245 B.R. at 887; In re Atlas Mach., 190 B.R. 798. As discussed below, Adell cites to a number of cases supporting his interpretation of § 303(i)(1), but he does not provide any cases dismissing applications for attorney's fees and costs because of a lack of jurisdiction. HMSC and JRH seek attorney's fees and costs pursuant to 11 U.S.C. § 303(i)(1) and, for the reasons stated above, this court finds that the application constituted a core proceeding over which the Bankruptcy Court had jurisdiction.[5]

Regarding another alleged jurisdictional defect, Adell argues that the application for attorney's fees and costs is barred because the judgment has been paid and JRH failed to seek relief from the judgment. According to Adell, HMSC and JRH's request for attorney's fees and

_____

[5]Adell also argues that the Bankruptcy Court lacked jurisdiction because HMSC was only a creditor of JRH. However, Appellants note that the Bankruptcy Court invited an application by HMSC on JRH's behalf and that the Bankruptcy Court did not dismiss the application because it was brought by HMSC. The identity of the applicant in this case would not affect the determination that the matter was a core proceeding over which the Bankruptcy Court retained jurisdiction.

costs merged with the judgment and, therefore, it must seek relief from the judgment before requesting additional damages. However, as noted by appellants in their reply brief, they seek attorney's fees and costs in connection to proceedings that occurred subsequent to the initial award and, therefore, its motion is not barred by the merger doctrine.

**B. 11 U.S.C. § 303**

As discussed above, HMSC applied for attorney's fees and costs pursuant to 11 U.S.C. § 303(i). That statute provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment-
>
> (1) against the petitioners and in favor of the debtor for-
>
> (A) costs;
>
> (B) a reasonable attorney's fee; or
>
> (C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection (g) of this section or section 1104 of this title;"
>
> (2) against any petitioner that filed the petition in bad faith, for-
>
> (A) any damages proximately caused by such filing; or
>
> (B) punitive damages.

The first step in interpreting any statute is to determine whether the language at issue has a plain and unambiguous meaning. <u>U.S. v. Mabry</u>, 518 F.3d 442, 450 (6th Cir. 2008) (citations omitted). The Supreme Court has repeatedly held that the Bankruptcy Code should be

interpreted in accordance with its plain language.  See, e.g., United States v. Ron Pair Enter., Inc., 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).  In Ron Pair, the Court stated: "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" 489 U.S. at 242, 109 S.Ct. 1026 (interpreting the meaning of § 506 of the Bankruptcy Code) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982)).  Moreover, the Supreme Court has found that the Code is the result of congressional compromises concerning the competing interests in bankruptcy cases, Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 61 n. 12, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and that, considering those compromises, it even more important to rely on the Code's plain language, rather than on outside evidence of congressional intent.  See Ron Pair, 489 U.S. at 240, 109 S.Ct. 1026; Board of Governors v. Dimension Fin. Corp., 474 U.S. 361, 373-74, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986) ("Application of 'broad purposes' of legislation at the expense of specific provisions ignores the complexity of the problems Congress is called upon to address and the dynamics of legislative action.")  Thus, if the statutory language is unambiguous and the statutory scheme coherent and consistent, then a court's inquiry must cease and it must apply the plain language of the statute.  Mabry, 518 F.3d at 450 (citations omitted).

In this court's view, the language of § 303(i)(1) is ambiguous as to whether a bankruptcy court can only award attorney's fees and costs incurred in defending against the filing of an involuntary petition or whether it may also award attorney's fees and costs in connection to

proceedings that arose out of the filing of the involuntary petition subsequent to the dismissal of

that petition.  Section 303(i)(1) permits a bankruptcy court to grant judgment against the

petitioner for costs and reasonable attorney's fees if the involuntary petition is dismissed and no

statutory language in § 303(i)(1) clearly limits awards of attorney's fees and costs to those

incurred in defending against the filing of an involuntary petition.  On the other hand, no

language in that statute expressly authorizes awards for any and all proceedings arising from the

involuntary petition, even those arising after the petition is dismissed.  To the extent the statutory

language supports either parties' interpretation, it supports the appellants' view because there is

no limitation on fees and costs in the language of the statute itself.  Nevertheless, given the lack

of clarity in the statutory language, § 303(i)(1) is ambiguous with respect to the issue on appeal.

The ambiguity in the language of § 303(i) is reflected in the cases interpreting that statute

as both appellants and Adell point to case law supporting their respective interpretation of the

statute.  The first case that appears to address this issue is <u>In re Advance Press & Litho, Inc.</u>, 46

B.R. 700, 703 (Bankr. D. Colo. 1984).  In that case, a bankruptcy court in the United States

District Court of Colorado found that nothing in the Bankruptcy Code or case authority limited

an award to the date of dismissal.  <u>In re Advance Press</u>, 46 B.R. at 703.  The court also found

that preparation for and attendance at the hearing on attorney's fees, costs and damages were part

of the matters resulting from the involuntary petition and, as such, they were compensable under

§ 303(I).  <u>In re Advance Press</u>, 46 B.R. at 703.

A few years later, a bankruptcy court in the United States District Court for the Northern

District of Texas relied on the reasoning of <u>In re Advance Press</u> in finding that it could award

attorney's fees and costs relating to the proceedings on damages that occurred after the dismissal of the involuntary petition.  In re Petrosciences Intern., Inc., 96 B.R. 661, 665 (Bankr. N.D. Tex. 1988).  The court in In re Petrosciences went on to hold that, in the event the petitioner appealed the award of fees and costs to the United States District Court, the alleged debtor would suffer additional damages as attorney's fees for which the court would award $10,000.00, and that, if this case was appealed to the Fifth Circuit Court of Appeals, the court would award an additional $10,000.00 for attorney's fees.  In re Petrosciences, 96 B.R. at 665.

In 1995, a bankruptcy court in the United States District Court for the Eastern District of Virginia found that, "[u]nder the circumstances of this case, compensable fees include time expended by [the alleged debtor] not only in defending the initial filing of the involuntary petition, but also time expended in defending [the petitioner's] appeals of the dismissal of the petition and preparing its request for fees, costs and damages."  In re Atlas Mach. and Iron Works, Inc., 190 B.R. 796, 803-804 (Bankr. E.D. Va. 1995), citing In re Advance Press, 46 B.R. at 703.  In that court's view, any award of attorneys' fees and costs under § 303(i)(1) should be for necessary work performed in defending against the involuntary petition and must be reasonable under all the circumstances.  In re Atlas Mach., 190 B.R. at 803.

In 1996, a bankruptcy court in the United States District Court for the District of New Jersey found that any award of attorney's fees and costs in the discretion of the court and pursuant to § 303(i)(1) may include both the cost of litigating the bad faith and damages aspect of the proceeding under § 303(i)(2) as well as the dismissal aspect of the proceeding under § 303(i)(1).  In re Landmark Distributors, Inc., 195 B.R. 837, 846 (Bankr. D.N.J. 1996) citing In re

Advance Press, 46 B.R. at 703. That court also noted that not allowing the attorney's fees and costs incurred in post-dismissal proceedings would deny approximately 87% of the fees requested in that case and, therefore, would fly in the face of legislative intent and common sense. In re Landmark, 195 B.R. at 846.

The first case relied upon by Adell was issued by a bankruptcy court in the United States District Court for the District of Connecticut in 1999. In re Allen-Main Associates, Ltd. Partnership, 229 B.R. 577, 578 (Bankr. D.Conn. 1999). In that case, the court held that a bankruptcy court does not have statutory authority to award attorney's fees and costs incurred in an appeal from the bankruptcy court because no such authority could reasonably be extracted from the provisions of § 303(i) and because the party seeking costs and fees in that case did not cite any persuasive authority. In re Allen-Main, 229 B.R. at 578. The court in In re Allen-Main went on to note that there were relevant rulings in both the Ninth Circuit and the Second Circuit holding that Bankruptcy Code § 523(d)[6] which grants bankruptcy courts authority to award prevailing parties attorney's fees and costs, did not authorize the bankruptcy court to award such fees and costs incurred on an appeal and that appellate courts are in a better position to award costs and fees with respect to appeals. In re Allen-Main, 229 B.R. at 578-579 citing Vasseli v. Wells Fargo Bank (In re Vasseli), 5 F.3d 351, 353 (9th Cir.1993) and AT&T Universal Card

_____

[6]11 U.S.C. 523(d) provides: "If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust."

Services Corp. v. Williams (In re Williams), 224 B.R. 523, 532 (B.A.P. 2d Cir. 1998). The court then stated that it could "conceive of no reasonable basis to distinguish the rulings under § 523(d) from a ruling under § 303(i). In re Allen-Main, 229 B.R. at 579. The court also found that In re Atlas Machine and In re Petrosciences, where appeal-related costs and attorney's fees were considered by the bankruptcy court under § 303(i), lacked precedential value because there was no issue raised as to the bankruptcy court's authority in those proceedings. In re Allen-Main, 229 B.R. at 579.

In 2000, a bankruptcy court in the United States District Court for the District of Kansas found that § 303(i) did not limit recoverable attorney's fees and costs to those incurred during the dismissal phase of a suit. In re Glannon, 245 B.R. 882, 894 (D. Kan. 2000). In that case, the court first determined that, because the general rule is that a prevailing party may recover costs for the entire bankruptcy proceeding, it would be illogical to construe § 303(i)(1) as either merely partially redundant or as somehow limiting an award of costs to only those costs incurred in the dismissal phase of the proceeding. In re Glannon, 245 B.R. at 894. The court also found that the drafters of the statute surely meant that costs were recoverable under § 303(i) without drawing a distinction between the defensive phase, in securing dismissal, or in the offensive phase, in being made whole where there was bad faith. In re Glannon, 245 B.R. at 894. In making that finding, the court noted that the large majority of cases that had addressed the issue supported its interpretation of § 303(i). In re Glannon, 245 B.R. at 894 citing In re Advance Press, 46 B.R. at 703; In re Petrosciences, 96 B.R. at 665; In re Atlas Mach., 190 B.R. at 807 among others. The court in Glannon also cited with approval the finding in In re Landmark, 195

B.R. at 846, found that because the great proportion of attorney's fees were incurred during the

damages phase of

the litigation, denying those fees would "fly in the face of legislative intent and common sense." In re Glannon, 245 B.R. at 895 quoting In re Landmark, 195 B.R. at 846.

In 2003, a bankruptcy court in the United States District Court for the Middle District of Pennsylvania found that § 303(i) did not authorize appellate-related costs and attorneys' fees.  In re Law Center, 304 B.R. 136, 138 (Bankr. M.D. Pa. 2003).  According to that court, while there are cases permitting reimbursement for time expended in defending appeals of the dismissal of the original petition, those cases have found little support in subsequent case law and there were no issues raised as to the bankruptcy court's authority in those proceedings to award appeal-related costs and attorneys' fees under Section 303(i).  In re Law Center, 304 B.R. at 138 citing In re Allen-Main, 229 B.R. at 578-579.  The court in In re Law Center also noted that, "if a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee."  In re Law Center, 304 B.R. at 138.

Finally, in 2004, the Ninth Circuit held that § 303(i)(1), which expressly grants discretionary authority to award fees at the trial level, should not be construed to grant similar authority to award fees at the appellate level and that. therefore, the bankruptcy court in that case had abused its discretion by awarding a party previously incurred appellate fees pursuant to § 303(i)(1).  Higgins v. Vortex Fishing Systems, Inc., 379 F.3d 701, 708-709 (9th Cir. 2004).  According to the Ninth Circuit, while the "plain language of the statute presents only two prerequisites for an award of fees, costs, or damages under § 303(i)(1): (1) the court must have

dismissed the petition on some ground other than consent by the parties; and (2) the debtor must

not have waived its right to recovery under the statute" <u>Higgins</u>, 379 F.3d at 705-706, the award

of fees and costs attributable to the appeals process pursuant to § 303(i)(1)  is contrary to law

given the holding of <u>State of Cal. Emp. Dev. v. Taxel ( In re Del Mission Ltd.)</u>, 98 F.3d 1147

(9th Cir.1996).  <u>Higgins</u>, 379 F.3d at 709.  The court in <u>In re Del Mission</u>, relying on the holding

in <u>Vasseli v. Wells Fargo Bank (In re Vasseli)</u>, 5 F.3d 351, 353-54 (9th Cir. 1993), had

concluded that "the only authority for awarding discretionary appellate fees in bankruptcy

appeals is Rule 38"[7]  <u>In re Del Mission</u>, 98 F.3d at 1154, and, as described by the Ninth Circuit

in <u>Higgins</u>, the controlling principle arising from <u>In re Del Mission</u> was that "we should not

[infer] from [a bankruptcy court's express discretionary authority to award fees at the trial level]

a similar authority to award fees at the appellate level."  <u>Higgins</u>, 379 F.3d at 709 quoting <u>In re

Del Mission</u>, 98 F.3d at 1154.  In making its ruling, the Ninth Circuit did note that "[t]his

holding creates a discrepancy that only Congress can rectify.  Despite Congress's clear intent to

award attorney's fees and costs to an alleged debtor who successfully defends an involuntary

bankruptcy bid, the debtor remains exposed to appellate attorney's fees unless it can be

demonstrated that the appeal was frivolous under Rule 38."  <u>Higgins</u>, 379 F.3d at 709 n. 3

　　　In this court's view, 11 U.S.C. § 303(i)(1) authorizes a bankruptcy court to award

attorney's fees and costs incurred from all proceedings arising out of the filing of an involuntary

petition if that petition is dismissed.  As discussed above, to the extent the statutory language

_____

[7]Fed. R. App. P. 38 states, "If a court of appeals determines that an appeal is frivolous, it
may ... award just damages and single or double costs to the appellee."

supports either parties' interpretation, it supports the appellants' view because there is no limitation on fees and costs in the language of the statute itself. The appeals and other litigation described above all resulted from Adell's filing of the involuntary petition and, as such, they are compensable under § 303(i).

While the Sixth Circuit has not ruled on this issue, the majority of cases discussed above support this interpretation of § 303(i) and the court adopts this interpretation. As found by those cases, nothing in the Bankruptcy Code limits an award to the date of the dismissal of the involuntary petition and, if the petitioner appeals the dismissal or the involuntary petition causes other litigation, the alleged debtor continues to suffer damages for which there should be compensation. In re Advance Press, 46 B.R. at 703, In re Petrosciences, 96 B.R. at 665; In re Atlas Mach., 190 B.R. at 803-804; . In re Glannon, 245 B.R. at 894. Moreover, it is possible that the majority of attorney's fees were actually incurred after an involuntary petition is dismissed and denying those fees would "fly in the face of legislative intent and common sense." In re Glannon, 245 B.R. at 895; In re Landmark, 195 B.R. at 846. In this case, it appears that the majority of attorney's fees and costs were incurred after the involuntary petition was dismissed given the amount requested in the second application for attorney's fees and costs in this case compared with the initial award of attorney's fees and costs.[8]

Additionally, in those cases cited by Adell, the decisions were based on findings that

---

[8]In the initial award, the Bankruptcy Court awarded attorneys' fees and costs in the amount of $313,230.68. See In re John Richards Homes, 439 F.3d at 254. In its second application, HMSC seeks $1,712,974.04 as compensation for fees and expenses incurred in enforcing the judgment and defending the appeals (Bankr. E.D. Mich. Petition No. 02-54689; D/E #834).

appellate courts could award attorney's fees and costs if an appeal was frivolous as a basis for denying bankruptcy courts the authority to award attorney's fees and costs with respect to appeals. In re Allen-Main, 229 B.R. at 578-579 (finding that cases in both the Ninth Circuit and the Second Circuit had held that 11 U.S.C. § 523(d) which grants bankruptcy courts authority to award prevailing parties attorney's fees and costs, did not authorize the bankruptcy court to award such fees and costs incurred on an appeal and that it could "conceive of no reasonable basis to distinguish the rulings under § 523(d) from a ruling under § 303(i)); In re Law Center, 304 B.R. at 138 (stating "if a district court or bankruptcy appellate panel determines that an appeal from an order, judgment, or decree of a bankruptcy judge is frivolous, it may, after a separately filed motion or notice from the district court or bankruptcy appellate panel and reasonable opportunity to respond, award just damages and single or double costs to the appellee."); Higgins, 379 F.3d at 709 (holding that a bankruptcy court does not have authority to award fees at the appellate level because the only authority for awarding discretionary appellate fees in bankruptcy appeals is Fed. R. App. R. 38).

While those courts focused on the power of the appellate courts to award attorney's fees and costs pursuant to § 523(d) and Fed. R. App. R. 38, they ignore the different standards for recovering attorney's fees and costs articulated in those sources and § 303(i)(1). As noted above, 11 U.S.C. § 523(d) provides that, if a creditor requests a determination of dischargeability of a consumer debt and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified. Fed. R. App. P. 38 states, "If a court

of appeals determines that an appeal is frivolous, it may ... award just damages and single or double costs to the appellee."  Section 303(i)(1), however, authorizes a bankruptcy court to award attorney's fees and costs if an involuntary petition is dismissed, regardless of whether the petition was filed in bad faith, was without substantial justification, or was frivolous.  Although the petitioner's motives may be taken into account, see In re Reid, 854 F.2d 156, 160 (7th Cir. 1988); In re Atlas Mach., 190 B.R. at 803, the "plain language of the statute presents only two prerequisites for an award of fees, costs, or damages under § 303(i)(1): (1) the court must have dismissed the petition on some ground other than consent by the parties; and (2) the debtor must not have waived its right to recovery under the statute" Higgins, 379 F.3d at 705-706.

If a statute is ambiguous, a court must look to other persuasive authority in an attempt to discern legislative meaning and that other persuasive authority can include the policy rationales behind the statute.  Brilliance Audio, Inc. v. Haights Cross Communications, Inc., 474 F.3d 365, 371 -372 (6th Cir. 2007).  In this case, the policies behind § 303(i) appear to support appellants' interpretation of that statute.  For example, in adopting a contrary interpretation of § 303(i) in Higgins, the Ninth Circuit noted that "[t]his holding creates a discrepancy that only Congress can rectify.  Despite Congress's clear intent to award attorney's fees and costs to an alleged debtor who successfully defends an involuntary bankruptcy bid, the debtor remains exposed to appellate attorney's fees unless it can be demonstrated that the appeal was frivolous under Rule 38." Higgins, 379 F.3d at 709 n. 3.  The interpretation of § 303(i)(1) offered by appellants, removes

that conflict and allows the bankruptcy court to award all the attorney's fees and costs incurred by an alleged debtor who successfully defends an involuntary bankruptcy bid.

As argued by appellants, even a good-faith filing of such an involuntary bankruptcy petition creates onerous circumstances for a debtor. In re Advance Press, 46 B.R. at 702. One bankruptcy court has noted that an involuntary petition "usually chills the alleged debtor's credit and his sources of supply. It can scare away his customers. It leaves a permanent scar, even if promptly dismissed. It is also obvious that the use of the bankruptcy court as a routine collection device would quickly paralyze this court." In re SBA Factors of Miami, Inc., 13 B.R. 99, 101 (Bankr. S.D. Fla. 1981). While § 303(i)(2) requires that an involuntary petition had been filed in bad faith before a bankruptcy court can award punitive damages, an award of attorney's fees and costs pursuant to § 303(i)(1) does not require a bad faith finding and it "is evident from the alternative provisions of § 303(i)(1) and (2) that Congress sensed there would be situations where the burdens imposed upon debtors, even in good-faith circumstances, should require the losing creditors to pay for the burden they had created. In re Advance Press, 46 B.R. at 702

An award of attorney's fees and costs pursuant to § 303(i)(1) is not without limitation, but in this court's view and in light of the statutory language, case law and polices relating to 11 U.S.C. § 303(i)(1), those limitations do not restrict any awards to those fees and costs fees directly incurred in defending against the involuntary petition and getting it dismissed. The Bankruptcy Court in this case had the authority to award reasonable attorney's fees and costs incurred from all proceedings arising out of the filing of an involuntary petition if that petition is

dismissed and, therefore, its decision should be reversed and the matter remanded for a decision on the merits.

## V.  Conclusion

For the reasons discussed above, the court recommends that  the decision of the Bankruptcy Court be **REVERSED** and that this case be remanded to the Bankruptcy Court for a decision on the merits of appellants' motion and a determination of a reasonable fee amount.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: November 19, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's
ECF System and/or U. S. Mail on November 19, 2008.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan