UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: JOHN RICHARDS HOMES                  CIVIL ACTION NO. 06-14355
BUILDING COMPANY, L.L.C.

                                            DISTRICT JUDGE STEPHEN J. MURPHY, III
HONIGMAN, MILLER, SCHWARTZ
AND COHN, L.L.P. and                        MAGISTRATE JUDGE VIRGINIA M. MORGAN
JOHN RICHARDS HOMES
BUILDING COMPANY, L.L.C.,

          Appellants,

     v.

KEVIN ADELL,

          Appellee.
_____/

## REPORT AND RECOMMENDATION
## APPEAL ON ATTORNEY'S FEES AND COSTS

### I. Introduction

This case involves an appeal by appellants Honigman, Miller Schwartz and Cohn

("HMSC") and John Richards Homes Building Co., L.L.C. ("JRH") from a September 21, 2006

order of the United States Bankruptcy Court for the Eastern District of Michigan (the

"Bankruptcy Court") denying HMSC's request for attorney's fees and costs incurred as a result

of appellee Kevin Adell's post-award conduct.  The matter comes before the court on Adell's

Motion for Partial Dismissal of the Appeal (D/E #28).  Adell wishes to preclude review of the

bankruptcy court's denial.  Appellants have filed a response in opposition to Adell's motion

-1-

(D/E #30) and Adell has filed a reply to that response (D/E #34).  For the reasons stated below,

this court recommends that Adell's motion be **DENIED** on the basis that Adell waived his

preclusion arguments by failing to raise them in a timely manner and by failing to address them

adequately in his motion, and that even if timely raised and adequately argued, neither claim

preclusion nor issue preclusion bars appellant review by this court.

**II. Background**

       **A. Underlying Case**

       As described by the Sixth Circuit, the underlying case in this matter involved a dispute

between JRH and Kevin Adell:

> As the bankruptcy court found, in December 2001, Adell and JRH
> entered into a Residential Building and Purchase Agreement
> whereby JRH, in exchange for $3,030,000, agreed to sell Adell a
> 1.8 acre parcel of property in Bloomfield Hills, Michigan, and to
> construct a home for Adell on the property, with construction to
> begin "within a reasonable time after the completion of building
> plans and issuance of permits."  On February 28, 2002, the deal
> closed.  The closing documents allocated $1,750,000 out of the
> $3,030,000 for the land purchase.
>
> Over the next few months, Adell's relationship with JRH and its
> principal, John Shekerjian, soured.  Adell began to complain about
> the pace of construction on his home and to contact JRH's former
> employees seeking negative information about JRH.  He told
> Shekerjian that he wanted another builder to build his house and,
> apparently, barred JRH from the property.  He also became upset
> about the amount he had paid for the land, contending that it was
> only worth $1 million instead of $1.75 million.
>
> On June 6, 2002, after a number of conversations, meetings, letters
> and other interactions between Adell or his representatives and
> JRH or its representatives, Adell filed a civil suit against JRH and
> Shekerjian in the Oakland County Circuit Court.  The complaint

-2-

included a number of claims, all of which essentially rested on two allegations: (1) that Shekerjian and JRH had orally told Adell that the land was worth $1,000,000, and that the home they would construct for him would have a value of $2,000,000, despite the fact that the executed sale documents allocated $1,750,000 to the value of the land, leaving at most $1,280,000 for the home construction; and (2) that Shekerjian for JRH had told Adell that construction would begin immediately after the sale closed, even though they knew that was impossible because there were "water problems" with the property, and that the resulting delay in commencing construction was not "reasonable." On June 18, 2002, JRH and Shekerjian jointly filed an answer, denying the substance of all of Adell's claims, stating affirmative defenses, and including a verified counter-complaint.

During the time between when Adell filed his state court civil suit and JRH and Shekerjian filed their responsive pleadings, Adell contacted at least two of JRH's contractors, telling them that JRH was in financial trouble and trying to persuade them to join him in filing an involuntary bankruptcy petition against JRH. Both refused.

On June 24, 2002, less than a week after JRH and Shekerjian filed their responses in the state court case and without any further discussion or communication, Adell, as the sole petitioning creditor, filed an involuntary bankruptcy petition against JRH pursuant to 11 U.S.C. § 303(b)(2). According to the petition, Adell's own claim against JRH for fraud and breach of contract was in the amount of $800,000. Adell sought to maximize the publicity attending his filing by hiring a public relations firm, Marx Layne, to publicize alleged defects in JRH's performance of its construction and financial obligations.

On July 1, 2002, JRH filed a motion to dismiss the petition. Noting that Adell's claim against JRH cited in the petition was also the basis for Adell's state court civil complaint against JRH and Shekerjian, and that JRH and Shekerjian had recently filed pleadings denying all of Adell's claims, JRH argued that Adell's claim was the subject of a "bona fide dispute," precluding its use as the basis for the petition. JRH also argued that Adell was required to have at least three petitioning creditors because JRH

was an entity with 12 or more creditors.  Should the petition be dismissed, JRH asked the bankruptcy court to award it fees, costs and damages pursuant to 11 U.S.C. § 303(i).  On July 12, 2002, Adell's bankruptcy attorneys filed a notice that three additional creditors had joined in the filing of the petition.

On July 15, 2002, the bankruptcy court held a hearing on JRH's motion to dismiss.  Ruling from the bench, the court granted the motion, concluding that Adell was not qualified to serve as a creditor in an involuntary bankruptcy because his claim against JRH was not undisputed. The court explained:

The record that is before the Court overwhelmingly establishes that there is a bona fide dispute concerning this petitioning creditor's claim against the Alleged Debtor ... [and]

... that there are significant genuine issues of material fact concerning any disposition of the issues raised in the [state court case], ... such fundamental issues as which of the parties breached the contract, which of the parties was the first to breach the contract.  There are clear issues of fact concerning particularly the fraud claim and the statutory claim.

Having rejected the sole petitioning creditor, Adell, the bankruptcy court ruled that it could not permit the joinder of other putative creditors.  Adell did not appeal the bankruptcy court's dismissal of the petition.

After a period of discovery, followed by a two-day evidentiary hearing, the bankruptcy court granted JRH's motion on April 25, 2003.  In a thorough opinion, the court found that Adell filed the involuntary bankruptcy petition against JRH in bad faith and awarded JRH compensatory damages in the amount of $4,100,000, punitive damages in the amount of $2,000,000, and attorneys' fees and costs in the amount of $313,230.68. [In re John Richards Homes Bldg. Co., L.L.C., 439 F.3d 248, 252-254 (6th Cir. 2006) (internal citations omitted).]

-4-

**B. Post-Judgment Events**

On May 2, 2003, Adell appealed the Bankruptcy Court's decision.  See In re John Richards Homes Building Co., L.L.C.,  312 B.R. 849, 854 (E.D. Mich. 2004).

On May 6, 2003, while the appeal was pending, Adell entered into a purchase agreement for a $2.8 million home in Florida.  See  In re John Richards Homes Bldg. Co., L.L.C., 298 B.R. 591, 593 (Bankr. E.D. Mich. 2003).  On May 8, 2003, he closed on the purchase of the Florida home.  See In re John Richards Homes, 298 B.R. at 593.

Adell subsequently filed an action in Florida state court seeking a declaratory ruling that his recently purchased Florida home was protected as a homestead under the Florida Constitution.  JRH  removed the state court action to the Bankruptcy Court for the Middle District of Florida  (the "Florida Bankruptcy Court") and filed a motion to transfer the action to the Michigan Bankruptcy Court.  The Florida Bankruptcy Court granted the motion to transfer on June 9, 2003.  See In re Adell, No. 04-23684, *5 (M.D. Fla. May 11, 2005).

On May 21, 2003, JRH filed a motion in the Bankruptcy Court for miscellaneous post-judgment relief, seeking the aid of the Bankruptcy Court to collect on its judgment.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #281)  Specifically, JRH argued that, because Adell had used the proceeds from his Michigan assets to purchase the Florida home immediately after the judgment was entered, he should be ordered to sell that home and remit the proceeds in partial satisfaction of the judgment.  See In re John Richards Homes, 298 B.R. at 593.

On September 17, 2003, the Bankruptcy Court granted JRH's motion in part after finding that Florida's homestead exemption, as construed by Florida Supreme Court, was preempted by

federal law and did not provide any protection for a party who had filed an involuntary bankruptcy petition in bad faith and who was attempting to protect his assets from the substantial compensatory and punitive damages awards entered against him by the Bankruptcy Court.  In re John Richards Homes, 298 B.R. at 605-606.  The Bankruptcy Court further found that, in the alternative, even if the Florida homestead exemption was not preempted, Adell did not qualify for it because the Florida house was not his homestead.  See  In re John Richards Homes, 298 B.R. at 607-608.  The Bankruptcy Court ordered that Adell sell the Florida property within sixty (60) days and turn the proceeds from that sale over to JRH.  See In re John Richards Homes, 298 B.R. at 606.  The Bankruptcy Court also ordered that Adell turn over certain assets to the U.S. Marshals and that the Michigan Secretary of State record a lien in favor of JRH on any vehicles still titled in Adell's name.  See In re John Richards Homes, 298 B.R. at 609.

On November 14, 2003, Adell sought relief under Chapter 11 of the Bankruptcy Code in the Florida Bankruptcy Court, immediately triggering the operation of the automatic stay imposed by Section 362 of the Bankruptcy Code and stopping any further collection attempts by JRH.  See In re Adell, 321 B.R. 573, 577 (Bankr. M.D. Fla. 2005).

In response, JRH first moved to transfer Adell's Chapter 11 case from the Florida Bankruptcy Court to the Bankruptcy Court in Michigan.  See In re Adell, 371 B.R. 541, 543 (Bankr. M.D. Fla. 2007)  That motion was denied.  See In re Adell, 371 B.R. at 543.  Having failed to obtain a transfer to the Michigan Bankruptcy Court, JRH tried, unsuccessfully to transfer the case to a different judge in the Middle District of Florida.  See In re Adell, 371 B.R. at 543.

-6-

On February 10, 2004, JRH filed a motion to dismiss Adell's Chapter 11 filing on the basis that it was filed in bad faith.  On May 28, 2004, the Florida Bankruptcy Court, after extensive hearings, entered an order and opinion denying JRH's motion to dismiss.  Specifically, the Florida Bankruptcy Court held that, while the circumstances surrounding Adell's Chapter 11 filing counseled in favor of order dismissing Chapter 11 case for Adell's lack of good faith in filing it, the court would give Adell one last opportunity to obtain confirmation of amended plan and would dismiss case only if amended plan could not be confirmed.  See In re Adell, 310 B. R. 466-468 (Bankr. M.D. Fla. 2004).

On February 25, 2004, Adell filed a Chapter 11 plan of reorganization which proposed to pay the judgment in full over time once the judgment became final and no longer appealable.  JRH objected to that plan.  See In re Adell, 371 B.R. at 543.  Subsequently, Adell amended the proposed plan to accelerate payment of the judgment, pay interest on the judgment, and to secure the judgment to the extent of at least $3.0 million with a cash escrow.  JRH continued to object.  See In re Adell, 371 B.R. at 543.

On August 5, 2004, the United States District Court for the Eastern District of Michigan affirmed the Bankruptcy Court's award of JRH's costs, attorneys' fees, compensatory damages and punitive damages pursuant to 11 U.S.C. § 303(i).  In re John Richards Homes Building Co., L.L.C.  312 B.R. 849, 867 (E.D. Mich. 2004).  Subsequently, on September 1, 2004, Adell appealed the District Court's affirmation of the Bankruptcy Court's award.  (Case No. 03-40109, D/E #20)

On October 27, 2004, the Florida Bankruptcy Court entered an Order denying Adell's

Fourth Amended Chapter 11 Plan and set a hearing for November 18, 2004, to consider a

dismissal of the bankruptcy case.  See In re Adell, 371 B.R. at 544.  That Order was challenged

by Adell, who filed a Motion for Reconsideration on November 5, 2004.  See In re Adell, 371

B.R. at 544.  On March 22, 2005, the Florida Bankruptcy Court granted Adell's request for

reconsideration.  See In re Adell, 371 B.R. at 544.

In response to the Reconsideration Order, Adell proposed a plan to place $7,000,000 in

escrow to be used to satisfy the judgment if it was affirmed on appeal.  That plan was to be

funded by Adell's employers and by a mortgage on Adell's homestead.  In re Adell, 371 B.R. at

544.

On February 1, 2005, the Florida Bankruptcy Court granted Adell's request to avoid, on

exemption impairment grounds, the lien on the Florida residence.  In re Adell, 321 B.R. 573, 578

(Bankr. M.D. Fla. 2005).  As found by the Florida Bankruptcy Court:

> The difference between the existing facts and the facts at the time
> the Michigan Bankruptcy Court rejected the claim should be quite
> evident. The Debtor's homestead exemption claim presented to
> this Court is in the context of an already pending bankruptcy case
> of the Debtor. Based on the evidence presented to this Court, this
> Court is satisfied that the Debtor complied with the residency
> requirements of Section 522(b)(2)(A), that he was a bone fide
> resident of Florida at the time he filed his Petition for relief under
> Chapter 11 in this Court, therefore, he is entitled to the homestead
> protection guaranteed by Article X, Section 4 of the Florida
> Constitution.  Thus, the Naples residence of the Debtor is exempt
> and JRH cannot compel the same to be sold to satisfy the
> Judgment of the Michigan Bankruptcy Court based on the sanction
> award granted to JRH.  [In re Adell, 321 B.R. at 578.]

-8-

On May 11, 2005, the Florida District Court, considering JRH's appeal of the Florida Bankruptcy Court's denial of JRH's initial motion to dismiss the Chapter 11 case reversed the Florida Bankruptcy Court's ruling and held that the denial was in error.  According to the Florida District Court, the Florida Bankruptcy Court abused its discretion by finding that Adell met the factors for filing his Chapter 11 Petition in bad faith while failing to dismiss the Chapter 11 Petition.  The Florida District Court also ordered the clerk to enter a judgment.  See In re Adell, No. 03-23684, *13-14 (M.D. Fla. May 11, 2005).

However, on May 12, 2005 and before an order dismissing the case could be entered, Adell filed a notice that he was voluntarily converting his bankruptcy to a case under Chapter 7.  See In re Adell, 371 B.R. at 544.  On May 17, 2005, the Florida Bankruptcy Court entered an order converting Adell's Chapter 11 Case to a case under Chapter 7.  See In re Adell, 371 B.R. at 544.

On July 22, 2005, JRH filed a second motion to dismiss and, on October 4, 2005, the Florida Bankruptcy Court entered an order granting JRH's motion to dismiss Adell's Chapter 7 Case after finding that cause existed for dismissal because Adell's filing was not supported by the well-established policy aims of Chapter 7.  See In re Adell, 332 B.R. 844, 848-849 (Bankr. M.D. Fla. 2005).

On February 14, 2006, the Florida Bankruptcy Court entered an order reaffirming the order on the motion to dismiss and denying Adell's Emergency Motion for Reconsideration and Motion for Stay Pending Reconsideration or Appeal.  See In re Adell, 343 B.R. 717, 722 (Bankr. M.D. Fla. 2006) ("this Court is satisfied that there is nothing stated in [Adell's] Emergency

-9-

Motion for Reconsideration which would warrant this court to set aside its Order on Motion to Dismiss.").

On March 1, 2006, the Sixth Circuit affirmed both the Bankruptcy Court's award and the District Court's approval of that reward.  See In re John Richards Homes Bldg. Co., L.L.C., 439 F.3d 248, 252 (6th Cir. 2006)

On April 3, 2006, Adell paid the judgment in full with interest.  Included in the payment were the punitive damages, costs and attorneys' fees that the Bankruptcy Court awarded JRH in defending the involuntary case and obtaining the Judgment.  See  In re Adell, 371 B.R. 541, 544 (Bankr. M.D. Fla. 2007).

**C. Litigation After Payment of Judgment**

**1. JRH's Motion for Sanctions in Florida Bankruptcy Court**

Following payment of the judgment, JRH filed a motion for sanctions in the Florida Bankruptcy Court.  On April 7, 2006, the Florida Bankruptcy Court entered an order denying JRH's motion to impose sanctions on the basis that Adell's petition had been dismissed and, therefore, it did not retain jurisdiction to issue any further orders in that case.  See  In re Adell, No. 2:06-cv-276-FtM-29SPC, 2006 WL 3827438, *1 (M.D. Fla. December 27, 2006).  On April 21, 2006, the Florida Bankruptcy Court denied reconsideration of that motion as without merit, and on April 30, 2006, JRH filed a notice of appeal.  In re Adell, 2006 WL 3827438 at *1.  On December 27, 2006, the United States District Court for the Middle District of Florida issued an opinion and order granting JRH's motion to remand.  In re Adell, 2006 WL 3827438 at *1. According to the Florida District Court, the case was to be remanded to the Florida Bankruptcy

-10-

Court to revisit JRH's motion for sanctions on the merits or to indicate that its prior order was

based on the merits as well as lack of jurisdiction.  In re Adell, 2006 WL 3827438 at *1.

On March 28, 2007, the Florida Bankruptcy Court denied JRH's motion for sanctions.  In

doing so, the Florida Bankruptcy Court found that, while JRH could find some support for its

position in the Florida Bankruptcy Court's previous rulings:

> It should be noted that the imposition of sanctions is a matter of
> discretion, and this Court had the power and authority to deny the
> Motion in order to permit Adell's attempt to resolve this problem
> within the confines of Chapter 11.  The fact that Adell failed to
> obtain confirmation and his case was ultimately dismissed is of no
> consequence in considering the JRH's Motion to Impose
> Sanctions.  Adell rightfully relied on this Court's approval to
> pursue all available means to save his homestead.  The post-filing
> litigation for which JRH now seeks sanctions was primarily
> initiated by JRH, who relentlessly pursued its claim and objected
> to the Debtor's every attempt to achieve rehabilitation through
> confirmation of his Chapter 11 Plans.
>
> This Court is satisfied that Adell attempted to pursue a legitimate
> goal within the utmost of his ability and, therefore, to impose a
> sanction would be a double punishment in addition to the $2
> million judgment imposed by the Michigan Bankruptcy Court. In
> addition, considering the totality of the circumstances, this Court is
> satisfied that the Order entered by this Court was on the merits
> and, therefore, any further sanctions would be improper. [In re
> Adell, 371 B.R. 541, 545-546 (Bankr. .M.D. Fla. 2007).]

On March 18, 2008, the Florida District Court affirmed the Florida Bankruptcy Court's

decision to deny sanctions.  In that decision, the Florida District Court found that:

> [The Florida Bankruptcy Judge] clearly recognized his power and
> authority to impose sanctions and that such a decision was a matter
> of discretion.  [The Florida Bankruptcy Court] thus followed the
> correct legal standards.  There is no claim that [the Florida
> Bankruptcy Court]  followed improper procedures in making his

-11-

> decision not to impose sanctions, and the record reflects no such
> procedural defect.  The Court's review of the record does not
> establish that [the Florida Bankruptcy Court's]  factual findings are
> clearly erroneous.  [The Florida Bankruptcy Court]  recognized
> that different portions of his prior findings could be cited by the
> parties supporting their respective positions, but in the end
> determined that sanctions were not warranted under all the
> circumstances of the cases.  This decision is clearly within the
> range of choices available to the judge as a matter of his discretion.
> Since there has been no abuse of discretion, [the Florida
> Bankruptcy Court's] decision not to impose sanctions is affirmed.
> [In re Adell, No. 2:07-cv-361-FTM-29SPC, 2008 WL 746833, *2
> (M.D.  Fla. March 18, 2008).]

On October 17, 2007, the Eleventh Circuit issued an opinion affirming the Florida

District Court's opinion.  In that decision, the Eleventh Circuit first found that, while the Florida

Bankruptcy Court had authority under its inherent powers and 11 U.S.C. § 105(a) to impose

sanctions, awarding sanctions is a matter of discretion and a finding of bad faith does not require

the imposition of sanctions.  See In re Adell, 296 Fed. Appx. 837, 839-840 (11th Cir. 2008)  The

Eleventh Circuit also found that

> Given the discretionary nature of sanctions, we are satisfied by the
> bankruptcy court's decision that "Adell attempted to pursue a
> legitimate goal within the utmost of his ability and, therefore, to
> impose a sanction would be a double punishment in addition to the
> $2 million judgment imposed by the Michigan Bankruptcy Court."
> The bankruptcy court's power to sanction "must be exercised with
> restraint and discretion."  The bankruptcy court exercised that
> restraint appropriately here.
>
> Furthermore, the district court did not abuse its discretion by
> affirming the bankruptcy court.  We agree with the district court
> that "[the Florida Bankruptcy Court] clearly recognized his power
> and authority to impose sanctions and that such a decision was a
> matter of discretion.  [The Florida Bankruptcy Court] thus
> followed the correct legal standards."  [The Florida Bankruptcy

-12-

> Court] has not made any clear error of judgment.  Indeed, both the
> bankruptcy court and the district court were well within the bounds
> of their authority.  [In re Adell, 296 Fed. Appx. at 839-840
> (internal citations omitted).]

**2. JRH's Motion for Additional Punitive Damages in Bankruptcy Court**

On April 13, 2006, JRH filed a "Motion for Assessment of Additional Punitive

Damages" in the Bankruptcy Court.  (Bankr. E.D. Mich. Petition No. 02-54689; D/E #834)  In

that motion, JRH sought sanctions on the basis that Adell's post-judgment conduct constituted

abuse of process and interference with the Bankruptcy Court's decrees.  Adell filed an objection

to the motion (Bankr. E.D. Mich. Petition No. 02-54689; D/E #879) and the Bankruptcy Court

conducted a hearing regarding that motion on July 10, 2006.  On September 21, 2006, the

Bankruptcy Court denied JRH's motion for assessment of additional punitive damages.  In re

John Richards Homes Co., L.L.C., No. 02-54689-R, 2006 WL 3230009 (Bankr. E.D. Mich.

September 21, 2006).  In denying that motion, the Bankruptcy Court stated:

> The Court declines to sanction Adell, either pursuant to any
> inherent power it may have or pursuant to § 105. Contrary to
> JRH's assertion, the Court did not order Adell to pay JRH $6.413
> million. The Court entered a judgment for that amount. A money
> judgment is not a court order. To the extent that Adell's conduct in
> the various courts warrants sanctions, JRH is free to seek redress in
> those courts. [In re John Richards Homes, 2006 WL 3230009 at
> *2.]

On October 3, 2006, JRH filed a notice of appeal with respect to the Bankruptcy Court's

denial of its motion for assessment of additional punitive damages (Case No. 06-14356, D/E #1).

On November 19, 2008, this court issued a report and recommendation finding that the decision

of the Bankruptcy Court should be affirmed (Case No. 06-14356, D/E #28).  Both Adell and JRH

-13-

filed objections to that report and recommendation (Case No. 06-14356, D/E #30, #31) and those

objections are pending before the District Court.

### 3. HMSC's Second Application for Attorneys' Fees and Expenses

On April 21, 2006, HMSC, the law firm representing JRH in this matter, filed a "Second

Application for Compensation of Attorney Fees and Expenses" in the Bankruptcy Court.

(Bankr. E.D. Mich. Petition No. 02-54689; D/E #834).  In that application, HMSC sought,

pursuant to 11 U.S.C. § 303(i), $1,712,974.04 as compensation for fees and expenses incurred

after entry of the judgment.  Adell filed an objection to that application (Bankr. E.D. Mich.

Petition No. 02-54689; D/E #880) and the Bankruptcy Court conducted a hearing regarding that

motion on July 10, 2006.  On September 21, 2006, the Bankruptcy Court denied HSMC's second

application.  See In re John Richards Homes, Co. L.L.C., No. 02-54689-R, 2006 WL 3228523

(Bankr. E.D. Mich. September 21, 2006).  In denying that application, the Bankruptcy Court

noted that (1) HMSC not only sought attorney's fees and costs for the appeals, but for all fees

and costs incurred trying to collect the judgment, and that (2) few cases have addressed the

precise issue of whether § 303(i)(1) authorizes the bankruptcy court to award fees and costs

beyond those directly incurred in defending the involuntary petition.  In conclusion the

Bankruptcy Court stated:

> [HMSC] not only seeks attorney fees and costs for the appeals, but
> for all fees and costs incurred trying to collect the judgment. HMS
> & C has offered no legal support for this request. In light of the
> caselaw to the contrary, the Court must deny its application for a
> second award of attorney fees and costs. [In re John Richards
> Homes, 2006 WL 3228523 at *2.]

-14-

**D. Appeals from Bankruptcy Court**

**1. Appellants' Brief on Appeal**

On October 3, 2006, JRH and HMSC filed a notice of appeal with respect to the
Bankruptcy Court's denial of HSMC's second application for compensation of attorney fees and
expenses (D/E #1).  In their appellate brief (D/E #3), JRH and HMSC argued that the
Bankruptcy Court erred when it found that it could not award the attorney's fees and costs JRH
incurred while trying to collect the judgment.  According to appellants, the Bankruptcy Court's
decision ignored the statutory text, relied upon wrongly-decided cases, and frustrated legislative
intent.

In his appellate brief (D/E #10), Adell argued that the Bankruptcy Court lacked
jurisdiction over HMSC's application because the bankruptcy case has been closed, HMSC was
only a creditor of JRH, and because JRH has not sought relief from the judgment, which has
been paid.  Adell also argues that § 303(i)(1) does not apply to post-judgment fees and that the
Bankruptcy Court's interpretation is consistent with both the comprehensive scheme governing
recovery of fees and costs as well as the case law regarding the recovery of appellate fees and
sanctions.

In their reply brief (D/E #13), JRH and HMSC asserted that Adell's arguments regarding
jurisdiction are meritless and should be rejected.  Appellants also reiterated that the Bankruptcy
Court could award attorney's fees and costs without regard to cause and without regard to
whether the fees and costs were expended before or after dismissal of the involuntary petition.

-16-

On November 19, 2008, this court issued a report and recommendation finding that the decision of the Bankruptcy Court should be reversed and that this case should be remanded to the Bankruptcy Court for a decision on the merits of the request (D/E #29). In this court's view, while the Bankruptcy properly exercised jurisdiction, it erred when it determined that it did not have authority under 11 U.S.C. § 303(i) to award attorneys' fees and costs beyond those directly incurred in defending the involuntary petition.

Adell filed objections to this court's report and recommendation (D/E #31) and those objections remain pending before the District Court.

**2. Adell's Motion for Partial Dismissal**

On November 10, 2008, Adell filed a motion for partial dismissal of the appeal (D/E #28). In that motion, Adell argues that the portions of the appeal must be dismissed on the basis of res judicata or collateral estoppel given the Eleventh Circuit opinion affirming the Florida District Court's opinion affirming the Florida Bankruptcy Court's decision to deny sanctions.

On December 4, 2008, appellants filed a response to Adell's motion for partial dismissal (D/E #30). In that response, appellants argue that Adell waived the arguments found in the motion by failing to raise them in a timely manner and by failing to adequately address them in his motion. Appellants also argue that neither res judicata not collateral estoppel applies in this action because the Florida Bankruptcy case involved different issues.

On December 15, 2008, Adell filed a reply to appellants' response (D/E #34). In that reply, Adell argues that his arguments are not waived because, even if there was a delay in making those arguments, appellants did not suffer any prejudice and because he adequately

-17-

briefed his res judicata and collateral estoppel arguments.  Adell also argues that the Eleventh

Circuit's opinion has preclusive effect and it conclusively bars the portion of appellants' claim

that concerns conduct in Florida.

## III. Standard of Review

District courts have jurisdiction to hear appeals from final judgments, orders and decrees

of bankruptcy judges.  See 28 U.S.C. § 158(a)(1).  The District Court reviews a bankruptcy

court's conclusions of law de novo.  See In re Holland, 151 F.3d 547, 548 (6th Cir. 1998).

## IV. Discussion

The rules of res judicata actually comprise two doctrines concerning the preclusive effect

of a prior adjudication, claim preclusion and issue preclusion.  See J.Z.G. Resources, Inc. v.

Shelby Ins. Co., 84 F.3d 211, 214 (6th Cir. 1996); Liona Corp. v. PCH Assocs. (In re PCH

Assocs.), 949 F.2d 585, 594 (2d Cir. 1991).  The general rule of claim preclusion, or true res

judicata, is that a valid and final judgment on a claim precludes a second action on that claim or

any part of it.  Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898

(1948).  "Claim preclusion applies not only to bar the parties from relitigating issues that were

*actually* litigated but also to bar them from relitigating issues that *could have been raised* in an

earlier action."  J.Z.G. Resources, 84 F.3d at 214 (emphasis in original).  Under issue preclusion,

also called collateral estoppel, once an issue is actually and necessarily determined by a court of

competent jurisdiction, that determination is conclusive in subsequent suits based on a different

cause of action involving any party to the prior litigation.  See Montana v. United States, 440 U.S.

147, 153-54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

As a preliminary matter, this Court must address the question of what law governs the issues of res judicata and collateral estoppel.  A federal court applies federal law in determining the preclusive effect of a prior federal judgment.  See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) ("It has been held in non-diversity cases since Erie R. Co. v. Tompkins, that the federal courts will apply their own rule of res judicata" (citation omitted)); Restatement (Second) of Judgments § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court."); J.Z.G. Resources, 84 F.3d at 213 (finding that federal law governs the preclusive effect of a prior federal diversity judgment).  Moreover, while res judicata generally looks to the court rendering the judgment to determine the scope of the judgment, J.Z.G. Resources, 84 F.3d at 213 -214 (citing Kern v. Hettinger, 303 F.2d 333, 340 (2d Cir. 1962)), this court need not endeavor to discern whether the Eleventh Circuit would apply "federal law" in that respect any differently from the Sixth Circuit as federal courts generally apply a single "accepted formulation of res judicata for federal court use."  Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994).  Similarly, the Seventh Circuit has stated that the "rules that govern the extent to which one judgment in a federal case precludes litigation in a second federal case are part of the federal common law."  Premier Elec. Const. Co. v. National Elec. Contractors Ass'n, Inc., 814 F.2d 358, 364 (7th Cir. 1987) (citing University of Tennessee v. Elliott, 478 U.S. 788, 106 S.Ct. 3220, 3225-27, 92 L.Ed.2d 635 (1986).

-19-

**A. Waiver**

**1. Undue Delay**

Appellants first argue that Adell's arguments based on res judicata are waived because Adell failed to raised them in a timely manner.  As a preliminary matter, it must be determined what judgment is relevant to Adell's arguments. Adell's motion and reply cite to the Eleventh Circuit opinion without discussing why it would be the relevant decision for purposes of res judicata and claim preclusion while appellants argue that the Florida Bankruptcy Court decision would be the applicable judgment.  As argued by appellants, a bankruptcy court decision can be a final judgment for purposes of res judicata.  See Winget v. JP Morgan Chase Bank, N.A., 537 F.3d 565, 578-579 (6th Cir. 2008) (holding that a bankruptcy court's sale order is a final order for res judicata purposes, not only because it is in line with Sixth Circuit rulings that an order confirming a reorganization is a final order, but also because it is in line with the policy behind res judicata).  See also I.A. Durbin, Inc. v. Jefferson Nat. Bank, 793 F.2d 1541, 1548 n. 8 (11th Cir. 1986) (finding that the bankruptcy court's ruling on core proceedings, if a final judgment, would be res judicata in any subsequent proceeding); Bank of Lafayette v. Baudoin (In re Baudoin), 981 F.2d 736, 742 (5th Cir. 1993) ("Our precedent clearly establishes that bankruptcy court orders authorizing the sale of part of the estate or confirming such sale are final judgments on the merits for res judicata purposes.").

Moreover, the fact that the decision of the Florida Bankruptcy Court was appealed does not change its effect as a final judgment.  See Smith v. S.E.C., 129 F.3d 356, 362 n. 7 (6th Cir. 1997) ("The pending appeal of the district court's judgment . . . does not deprive that judgment

-20-

of res judicata effect."); <u>Commodities Export Co. v. U.S. Customs Serv.</u>, 957 F.2d 223, 228 (6th Cir. 1992) ("it is well established that a final trial court judgment operates as res judicata while an appeal is pending"); <u>Jaffree v. Wallace</u>, 837 F.2d 1461, 1466 (11th Cir. 1988) ("[t]he established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal.").

Claim and issue preclusion only require that the judgment or ruling be issued by a court of competent jurisdiction.  <u>U.S. v. Vasilakos</u>, 508 F.3d 401, 406 (6th Cir. 2007); <u>Rawe v. Liberty Mut. Fire Ins. Co.</u>, 462 F.3d 521, 528 (6th Cir. 2006).  Adell does not dispute that the Florida Bankruptcy Court was a court of competent jurisdiction and, in this Court's view, the Florida Bankruptcy Court's decision would be the one applicable to Adell's arguments

Since the Florida Bankruptcy Court decision is the relevant decision for purposes of res judicata, Adell would have been able to raise those arguments at any time after March 28, 2007.  However, Adell waited over a year and a half, until November 10, 2008, to file his motion for partial dismissal.  The failure to plead or raise in a timely manner matters calling for the application of the doctrines of res judicata may be regarded as a waiver. For example, in <u>Kern Oil & Refining Co. v. Tenneco Oil Co.</u>, 840 F.2d 730, 735 (9th Cir. 1988), the defendant argued that the plaintiff was barred by res judicata from proceeding with its case, but the Ninth Circuit disagreed because the defendant had delayed raising the argument.  The Ninth Circuit first noted that the defendant had failed to raise the preclusion defense in its original answer to the plaintiff's complaint and it later found preclusion defenses must always be raised before trial. <u>Kern Oil</u>, 840 F.2d at 735.  Similarly, while this issue almost always arises in the context of the

early stages of a case at the trial level, a number of other cases have held that undue delay in raising preclusion defenses may result in waiver of those arguments.  See, e.g., U.S. v. Shanbaum, 10 F.3d 305 (5th Cir. 1994); Totalplan Corp. of Am. v. Colborne, 14 F.3d 824, 832 (2d Cir. 1994). North Pacifica, LLC v. City of Pacifica, 366 F. Supp. 2d 927, 929 (N.D. Cal. 2005).

Adell offers no justification for his delay in bringing his res judicata or collateral estoppel arguments.  Instead, he argues that there was no prejudice.  As noted by Adell, the Sixth Circuit has excused delay where there has been no prejudice.  See, e.g., Golden v. C.I.R., 548 F.3d 487, 494 (6th Cir. 2008) (allowing a res judicata defense to be raised by motion where no prejudice was shown and plaintiff had an opportunity to file an additional brief).  Here, appellants were able to fully respond to Adell's new arguments,[1] but the goals of the preclusion doctrines include promoting judicial economy and shielding litigants (and the judicial system) from the burden of re-litigating issues.  Gilbert v. Ferry, 413 F.3d 578, 580 (6th Cir. 2005); Hanger Prosthetics & Orthotics East, Inc. v. Henson,  299 Fed. Appx. 547, 555 (6th Cir. 2008).  In this case, those goals have not been met because of Adell's undue delay in making his arguments, and issues that Adell now asserts are barred have already been re-litigated in a supplemental brief, at oral argument, and in this court's Report and Recommendation.  Because the delay has thwarted the purpose of the preclusion doctrine, Adell's arguments based on res judicata and collateral estoppel should be deemed waived.  See Gilbert, 413 F.3d at 580 ("If the prevailing party in a

---

[1]There was no oral argument on this motion, but that is because this Court determined that there was no need for oral argument and dispensed with oral arguments in accordance with Local Rule 7.1(e)(2).   (D/E #36)

previous action fails to raise collateral estoppel as a defense to a subsequent action, and if the

parties in fact re-litigate the issue, then the party who failed to raise collateral estoppel should be

deemed to have waived it since the purpose served by collateral estoppel [to prevent the

re-litigation of issues] has been fatally compromised.")

### 2. Failure to Adequately Address Arguments

Appellants also argue that Adell waived his arguments based on res judicata and

collateral estoppel by failing to adequately address those arguments in his motion for partial

dismissal.  Arguments, including preclusion arguments, that are woefully underdeveloped are

deemed waived.  See, *e.g.*, McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997); EB-Bran

Productions v. Warner, 242 Fed.Appx. 311, 313, 2007 WL 1748119, *2 (6th Cir. 2007).  See

also Blue v. Coca-Cola Enterprises, Inc., 43 Fed. Appx. 813, 816 (6th Cir. 2002) (conclusory

statements in a brief are not sufficient to satisfy burden of proof).  In this case, Adell's

arguments on the basis of claim preclusion or issue preclusion should be deemed waived in light

of Adell's failure to adequately address them.

This Court would first note that Adell's motion for partial dismissal, memorandum in

support of his motion, and his reply brief are inconsistent as to what exactly he seeks to have

dismissed and that inconsistency prevents meaningful review of Adell's motion.  While Adell

first requests the court "grant this motion and dismiss those portions of the appeal filed by

Honigman and JRH seeking the relief that the Eleventh Circuit has rejected" (Appellant's

Motion for Partial Dismissal, p. ii), he later asserts in his Statement of Questions Presented that

this case involves whether "the portions of the appeal of the bankruptcy court's order declining

-23-

to award additional attorneys' fees based on Adell's conduct in Florida must be dismissed."
(Memorandum in Support of Motion for Partial Dismissal, p. 1)  Subsequently, Adell states that
"The Eleventh Circuit's decision has res judicata or collateral estoppel effect and conclusively
bars appellants' claim that (1) Adell's behavior in Florida somehow supports an award of further
punitive damages, or that (2) JRH was not the 'relentless' aggressor in the proceedings in Florida
and thus that the additional attorneys' fees and costs were somehow Adell's fault and
responsibility."  (Memorandum in Support of Motion for Partial Dismissal, p. 8)  Later, Adell
asserts that "the portion of the appeal grounded on Adell's Florida conduct must be dismissed"
and "those portions of the appeal based on Adell's conduct in Florida must be dismissed."
(Memorandum in Support of Motion for Partial Dismissal, p. 10)  In his reply brief, Adell
appears to focus on the issue of whether Adell engaged in bad faith in Florida  (Appellant's
Reply Brief, p. 4), but he also, again, states that there should be dismissal of all claims "based on
Adell's conduct in Florida." (Appellant's Reply Brief, p. 5)

 The relief most frequently mentioned by Adell is a ruling that res judicata or collateral
estoppel bars the portions of the appeal based on Adell's conduct in Florida.  However, that
broad argument is clearly invalid in light of the fact that Adell engaged in other conduct in
Florida besides filing the petition for bankruptcy discussed by Adell.  For example, Adell filed
an action in Florida state court seeking a declaratory ruling that his recently purchased Florida
home was protected as a homestead under the Florida Constitution.  His conduct in that regard is
clearly not at issue in the Eleventh Circuit's opinion.

Additionally, Adell's continuing reliance on the Eleventh Circuit opinion, rather than the Florida Bankruptcy Court decision, as the basis for his arguments also demonstrates Adell's failure to develop his arguments. Adell's motion for partial summary judgment does not discuss why the Eleventh Circuit opinion is the relevant judgment, nor does he respond in his reply brief to appellants' argument that the Florida Bankruptcy Court decision would be the relevant judgment. Instead, Adell continues to base his arguments on the Eleventh Circuit opinion while completely ignoring the question of whether it is proper to do so. As discussed above, this court agrees with appellants' argument that the decision of the Florida Bankruptcy Court is the relevant judgment against which to measure if and when matters are precluded.[2]

The inconsistency in the relief Adell seeks, as well as the other problems with Adell's motion, raise additional concerns given the lack of detail in Adell's motion. As noted by appellants, Adell only provides a cursory basis for asserting that the appeal is precluded and he freely mixes in arguments relating to two separate appeals[3] without making any attempt to distinguish between the facts, claims, legal authority, and other differences between the two appeals.

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a

---

[2]As noted by appellants, by continuing to rely on the Eleventh Circuit opinion, which is more recent than the Florida Bankruptcy Court decision, Adell mistakenly shortens the length of time that has passed in which he could have made the preclusion arguments.

[3]The other appeal relates to the Bankruptcy Court's denial of JRH's motion for additional punitive damages.

possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."

McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997).  In this case, by inconsistently

describing what he asserts is barred by res judicata or collateral estoppel, ignoring the question

of what case underlies his arguments, and only offering a cursory analysis, Adell has left it to the

court to develop his arguments.  As a consequence, they should be deemed waived.

### B. Res Judicata/Claim Preclusion

Res judicata, often called "claim preclusion," is a judicially made doctrine with the

purpose of both giving finality to parties who have already litigated a claim and promoting

judicial economy; it bars claims that could have been litigated as well as those which were.

Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).  Courts

apply claim preclusion to promote the finality of judgments, which in turn increases certainty,

discourages multiple litigation and conserves judicial resources.  Federated Department Stores v.

Moitie, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

With respect to claim preclusion in federal courts. "a final judgment on the merits of an

action precludes the parties or their privies from relitigating issues that were or could have been

raised in that action."  Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308

(1980).  Accordingly, "[u]nder the doctrine of res judicata, also known as claim preclusion, a

party is precluded from bringing a claim when there exists (1) a final decision on the merits by a

court of competent jurisdiction; (2) a subsequent action between the same parties or their

'privies[';] (3) an issue in the subsequent action which was litigated or should have been litigated

in the prior action; and (4) an identity of the causes of action."  Golden v. C.I.R., 548 F.3d 487,

-26-

494-495 (6th Cir. 2008) (quoting <u>United States v. Vasilakos</u>, 508 F.3d 401, 406 (6th Cir. 2007) (alteration in original).  <u>See</u> <u>also</u> Jaffree v. Wallace, 837 F.2d 1461, 1466 (11th Cir. 1988) ("In order for the doctrine of res judicata to bar a subsequent suit, four elements must be present: (1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases.")

Adell argues that the Florida Bankruptcy Court decision (or maybe the Eleventh Circuit decision) and this case are identical.  Appellants disagree.  Identity of causes of action means an "identity of the facts creating the right of action and of the evidence necessary to sustain each action."  <u>Sanders Confectionery Products, Inc. v. Heller Financial, Inc.</u>, 973 F.2d 474, 484 (6th Cir. 1992) (quoting <u>Westwood Chemical Co. v. Kulick</u>, 656 F.2d 1224, 1227 (6th Cir. 1981). The Sixth Circuit has specifically rejected applying a "narrow" test for identity used by other circuits in conjunction with bankruptcy proceedings.  <u>See</u> <u>Winget</u>, 537 F.3d at 580-81 (declining to adopt a test narrowly defining "identity").

Under this broad look, the cases would meet the fourth element of claim preclusion. Both actions arose out of Adell's post-judgment activities.  Appellants argue that the causes of actions are not identical because each sought different relief and were based on different legal grounds. However, appellants' argument relates more to analysis of whether a particular issue was raised rather than whether the causes of action arise from "the same transaction or series of transactions."  The latter is enough for the fourth element of claim preclusion.  <u>See</u> <u>Micro-Time Mgmt. Sys., Inc. v. Allard & Fish, P.C.</u>, 983 F.2d 1067 (6th Cir. 1993) (noting that a claim is

-27-

identical if "the claims arose out of the same transaction or series of transactions," or if "the claims arose out of the same core of operative facts").

Appellants are correct, however, with respect to their argument that the third element, that is, whether an issue in this action was litigated or should have been litigated in the Florida Bankruptcy Court, bars review.  As discussed above, in the prior action in the Florida Bankruptcy Court, JRH sought sanctions with respect to Adell's actions in the Florida Bankruptcy Court pursuant to the inherent power of the court or 11 U.S.C. § 105(a).[4]  Under Section 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Orders under § 105(a) may include sanctions, but the bankruptcy court is not required to do so as § 105(a) is, on its face, a discretionary tool for the courts.  In re Adell, 296 Fed. Appx. at 839. Under its inherent powers, the bankruptcy court has the discretionary power to impose sanctions under appropriate circumstances.  Chambers v. NASCO, Inc., 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).  An "[i]nvocation of a courts inherent power requires a finding of bad faith." In re Mroz, 65 F.3d 1567, 1575 (11th Cir. 1995) (citing Chambers, 501 U.S. at 49)  However, a finding of bad faith does not compel a court to impose sanctions.  In re Adell, 296 Fed. Appx. at 839.

---

[4]In its decision denying sanctions, the Florida Bankruptcy Court does not identify the legal basis for any sanctions it might have imposed.  See  In re Adell, 371 B.R. 541.  However, the subsequent Eleventh Circuit opinion discussed JRH's motion with respect to both the inherent power of the court and 11 U.S.C. § 105.  See In re Adell, 296 Fed. Appx. at 839.

-28-

The Michigan Bankruptcy Court denied appellants attorneys' fees and costs with respect to Adell's post-award conduct under 11 U.S.C. § 303(i)(1).  It is this issue that appellants wish reviewed.  This is not an issue presented to or decided by or which could have been presented to the Florida Bankruptcy Court.  Therefore, review is not barred.

Title 11 U.S.C. § 303(i) provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment-
> (1) against the petitioners and in favor of the debtor for-
> (A) costs;
> (B) a reasonable attorney's fee; or
> (C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection (g) of this section or section 1104 of this title;"
> (2) against any petitioner that filed the petition in bad faith, for-
> (A) any damages proximately caused by such filing; or
> (B) punitive damages.

Section 303(i)(1) authorizes a bankruptcy court to award attorney's fees and costs if an involuntary petition is dismissed, regardless of whether the petition was filed in bad faith, was without substantial justification, or was frivolous.  Although a Bankruptcy petitioner's motives may be taken into account, see In re Reid, 854 F.2d 156, 160 (7th Cir. 1988); In re Atlas Mach. and Iron Works, Inc., 190 B.R. 796, 803 (Bankr. E.D. Va. 1995), the "plain language of the statute presents only two prerequisites for an award of fees, costs, or damages under § 303(i)(1): (1) the court must have dismissed the petition on some ground other than consent by the parties; and (2) the debtor must not have waived its right to recovery under the statute"  Higgins v. Vortex Fishing Systems, Inc., 379 F.3d 701, 705-706 (9th Cir. 2004).  See also In re Advance

-29-

Press & Litho, Inc., 46 B.R. 700, 702 (Bankr. D. Colo. 1984) (finding that, while § 303(i)(2)

requires that an involuntary petition had been filed in bad faith before a bankruptcy court can

award punitive damages, an award of attorney's fees and costs pursuant to § 303(i)(1) does not

require a bad faith finding and it "is evident from the alternative provisions of § 303(i)(1) and (2)

that Congress sensed there would be situations where the burdens imposed upon debtors, even in

good-faith circumstances, should require the losing creditors to pay for the burden they had

created."

        Thus, as correctly argued by appellants, the Michigan Bankruptcy Court decision and the

Florida Bankruptcy Court decision were based on different legal grounds, different types of

relief, and applied different standards.  Section 105(i)(1) of the Bankruptcy Code permits an

award of attorneys' fees and costs where an involuntary petition has been dismissed, regardless

of whether of whether the involuntary petition was filed in bad faith or not.  In response to

HMSC's motion pursuant to § 105(i)(1), the Bankruptcy Court found that did not have the

authority to award fees and costs beyond those directly incurred in defending the involuntary

petition.  Title 11 U.S.C. § 105(a) and the inherent power of the courts permit an award of

sanctions in appropriate circumstances.  In response to JRH's motion pursuant to § 105(a) and

the court's inherent power, the Florida Bankruptcy Court found that Adell should not be

sanctioned for filing the Chapter 11 Petition and Chapter 7 Petition.  In light of those

fundamental differences between the two actions, although rising from the same series of

transactions, Adell's argument that an issue in this case was litigated or could have been litigated

in the Florida Bankruptcy case is without merit and, consequently, his argument on the basis of claim preclusion should be rejected.

Adell also asserts that the attorneys' fee and issue would have been litigated in the Florida Bankruptcy Court had JRH prevailed on the motion for sanctions, but that assertion is without merit as well. The Florida Bankruptcy Court may have awarded attorneys' fees and costs if JRH had prevailed, but those fees and costs would have been awarded as sanctions pursuant to 11 U.S.C. § 105 or the inherent power of the court. At no point would the Florida Bankruptcy Court have had the opportunity or the authority to address whether appellants were entitled to attorneys' fees and costs pursuant to 11 U.S.C. § 303(i)(1) on the basis that the involuntary petition, filed in the Michigan Bankruptcy Court, had been dismissed.

### C. Collateral Estoppel/Issue Preclusion

Res judicata should not be confused with as collateral estoppel, sometimes called issue preclusion. Issue preclusion "only 'preclude[s] relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action.'" Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d 474, 480 (6th Cir. 1992) (quoting Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 918 F.2d 658, 661 (6th Cir. 1990).

Here, the parties dispute whether the any issues of fact or law raised in this action were actually litigated and decided in the Florida Bankruptcy Court. As discussed above, this court finds that no issue presented in this appeal was ever litigated in the Florida Bankruptcy case given the fundamental differences between the two actions with respect to the legal basis for

-31-

each action, the relief sought, and the standards governing the respective cases.  The issues of fact and law in this case involve whether appellants are entitled to attorneys' fees and costs pursuant to 11 U.S.C. § 303(i)(1) with respect to Adell's post-award conduct and those issues were not actually litigated or decided as part of the Florida Bankruptcy case.

## V. Conclusion

For the reasons discussed above, this court recommends that Adell's motion be **DENIED** on the basis that Adell waived his preclusion arguments by failing to raise them in a timely manner and by failing to adequately address them in his motion.  In the alternative, this court recommends that Adell's motion be denied on the basis that neither claim preclusion nor issue preclusion applies in this matter.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: March 12

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on March 12, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan

, 2009